Graves *v.* Mumford.

---

---

LUTHER GRAVES *vs.* MARY M. MUMFORD, ABRAHAM VARICK, SALMON GORSLINE and HENRY S. POTTER.

In February, 1847, G. applied to W. for a loan of $3000 upon a bond and mortgage on his farm.   W., as the agent of V. who had sent money to him for investment, agreed to make the loan.   There was, at the time, a mortgage upon the farm, given by P., a former owner, to H. S. P., for $2200. G. then gave his bond and mortgage to V. to secure the payment of the sum of $3000, which he received from W. less the amount of H. S. P.'s mortgage, which sum W. retained in his hands to pay the latter mortgage.   The money secured by the mortgage from P. to H. S. P. was not then due, and H. S. P. refused to receive the same before it was due.   W. paid H. S. P. the interest on his mortgage, from time to time, until the 2d of July, 1849, when he paid him the balance of principal and interest, with money belonging to M., in his hands to be invested for her.   H. S. P. then, at the request of W., executed an assignment of the mortgage in blank, W. saying he wanted the mortgage, to raise the money again temporarily, and did not know from whom he should get the money.   He afterwards filled up the blank with

Graves *v.* Mumford.

the name of M. as the assignee. W. died in 1851, without having applied the money of V., retained by him for that purpose out of the loan made to G., to the payment of the P. mortgage. He had, from time to time, remitted to V. the interest on the whole amount of G.'s mortgage. V. had no actual notice or knowledge of the existence of the P. mortgage, or of the facts relative to its alleged payment by W. An indorsement was made upon the bond of P., by W., stating that the bond was not to be enforced against P., but resort was only to be had to the mortgage. In November, 1850, G. and wife conveyed to the plaintiff a portion of the mortgaged premises. In March, 1852, M. having commenced a foreclosure of the P. mortgage so assigned to her, by advertisement under the statute, the plaintiff brought this action, to restrain a sale of the premises under the advertisement.

*Held* 1. That M. had a right to purchase the P. mortgage from H. S. P., and to take an assignment thereof for her own benefit, as an investment of her money, or otherwise, and to employ W. as her agent for that purpose; and this although it was the duty of W., which he owed to V. and G. to pay off and discharge that mortgage, instead of keeping it on foot and causing it to be assigned.

2. That M. was not chargeable with notice of the transactions between W., V. and G., for the reason that those transactions were not connected with the subject matter of W.'s agency for her.

3. That the legal effect of the transactions between W. and H. S. P. was not a payment and satisfaction of the P. mortgage. That W. was then acting as the agent of M., and paid the money out of her funds, which he had no right to use for any other purpose than an investment for her; and that the object of his agency in her behalf would be defeated by regarding the payment in the light of a satisfaction of the mortgage.

4. That the indorsement made by W. upon the bond of P. was no evidence of the payment of either the bond or mortgage, but was, at most, only a release of the personal liability of P.

5. That the assignment of the P. mortgage to M. was valid and effectual, and the mortgage was a lien upon the premises for the full amount secured thereby, deducting the payments made thereon.

6. That the plaintiff, as the owner of a portion of the mortgaged premises, was entitled to be relieved as against the mortgage given by G. to V., to the amount due on the P. mortgage. That the agreement of W. to pay off the P. mortgage, and the retention of the money of V. by him for that purpose, bound V. to see that mortgage discharged before the mortgage given by G. should become valid for the full amount of $3000. And that this agreement being a part of the contract of loan, V. was bound to fulfill it, and must be held responsible, as between him and G. and the plaintiff, for the fidelity of his agent.

THIS action was brought to have a bond and mortgage, which is held by the defendant Mary M. Mumford, and which is a lien upon the plaintiff's farm, delivered up and canceled. The case was this: On or about the 1st of February, 1847, the defendant Salmon Gorsline applied to Frederick Whittlesey, then of the city of Rochester, since deceased, for a loan of $3000, to be secured by his bond and a mortgage upon the farm in question, then owned by said Gorsline, situated in the town of Irondequoit, in the county of Monroe, and particularly described in the complaint. Whittlesey, as the agent of the defendant Abraham Varick, and having in his hands as such agent the money of said Varick for investment, agreed to make the loan. When the application was made for this loan, there was a mortgage upon the farm in question, duly recorded, given by one James Parsons to the defendant Henry S. Potter, dated January 10th, 1844, upon which there was unpaid about $2200, the said Parsons being at the date of said mortgage the owner of the farm; and he afterwards conveyed the same to the defendant Gorsline. Gorsline thereupon executed his bond, dated February 1st, 1847, conditioned to pay $3000 to the defendant Varick, secured by a mortgage executed by himself and wife to Varick, upon said farm. The bond and mortgage were then delivered by Gorsline to Whittlesey for Varick, and Whittlesey paid to Gorsline the $3000, less the amount of Potter's mortgage which he retained in his hands to pay the latter mortgage, that being a part of the agreement for the loan; at this time the money secured by the mortgage from Parsons to Potter was not due, and Potter refused to receive the principal until it was due. Whittlesey paid Potter the interest on his mortgage from time to time, until the 2d July, 1849, when he paid him the balance of the principal and interest, with money belonging to the defendant Mumford, in his hands to be invested for her. This payment was made in the manner and under the circumstances following: Potter and Whittlesey met at the office of the latter in the city of Rochester, on

the 2d day of July, 1849. The amount due Potter on the mortgage for principal and interest was ascertained to be $2287.39, for which Whittlesey gave Potter his check on the Commercial Bank of Rochester, where the money of the defendant Mumford was deposited in Whittlesey's name. Whittlesey then drew up an assignment of the mortgage, to be executed by Potter, with a blank for the name of the assignee, and requested Potter to execute it, to which Potter objected. Whittlesey then said to Potter, "I have paid the money, have I not? nobody else has paid it." Potter then said "yes." Whittlesey then said he wanted the mortgage, to raise the money again temporarily; said either that he had used or spent the money, and that he wanted to raise the money temporarily, and he wanted the assignment in blank, because he did not know from whom he should get the money. Potter then executed the assignment, with the blank left for the name of the assignee, and delivered the same with the bond and mortgage to Whittlesey, who afterwards filled up the blank with the name of the defendant Mumford. The bond and mortgage were produced on the trial at the special term, by the counsel for the defendant Mumford, together with the assignment; which assignment bore date July 2d, 1849, and was in the usual form, signed by Potter and witnessed by Whittlesey, with the name of the defendant Mumford, as assignee. It was a printed blank, filled up in the handwriting of Whittlesey, and its execution by Potter was proved on the 6th of July, 1849, by Whittlesey as subscribing witness, before a commissioner of deeds. Whittlesey died in 1851, without having applied the money of Varick, retained by him for that purpose out of Gorsline's loan, to the payment of the mortgage of Parsons to Potter, and without having paid said mortgage in any way, except as above stated. He remitted the interest on the whole amount of Gorsline's mortgage, from time to time, as the same fell due to Varick, who was a capitalist residing in the city of New York, and had no actual or personal notice or knowledge of the existence of the Par-

sons mortgage, or of the foregoing transactions in relation to its alleged payment by Whittlesey, who had sent him the Gorsline bond and mortgage for the $3000, as an absolute unconditional investment for that amount. The bond of James Parsons to Potter, when produced at the trial as afore-said, had upon it, in the handwriting of Whittlesey, the fol-lowing indorsement: "This bond is not to be enforced against James Parsons personally, but resort is only to be had to the mortgage. July 2d, 1849. F. Whittlesey." Thomas Parsons, a witness for the plaintiff, testified that in 1849 he was the general agent of James Parsons, and had charge of his busi-ness. That he saw H. S. Potter on the day when he, Potter, had received the money from Whittlesey, and had a conversa-tion with him. That he was present when the above endorse-ment on the bond was made, of July 2d, 1849. That he told Whittlesey that Potter had told him the mortgage was paid. That Whittlesey replied that the mortgage was paid, but he wanted to hold it to protect the Varick mortgage. He said the only incumbrance on the farm was the Varick mortgage. That he would cancel the bond, if that would be satisfactory to witness. Witness told him he wanted both the bond and mortgage, but if he would satisfy the bond, it would probably answer. That Whittlesey then made the indorsement on the bond. This evidence of the conversation between the witness and Whittlesey was objected to in due time by the counsel for the defendant Mumford. The objection was overruled, and an exception taken.

It appeared that the defendant Potter conveyed the farm in question to the said James Parsons, by deed dated January 10, 1844. Parsons, at the same time, executed a mortgage thereon to said Potter, to secure the sum of $2221.74, being part of the purchase money, which was the same mortgage above mentioned. That on the 20th day of February, 1845, Parsons and wife conveyed the same premises to the defend-ant Gorsline, subject to said mortgage, which Gorsline assumed to pay. That Gorsline continued to own and occupy the

Graves *v.* Mumford.

said premises until November 12th, 1850, when he and his wife conveyed to the plaintiff, by deed with covenants of warranty, a portion of said farm, being 152 acres thereof, the whole farm containing 254 acres. In March, 1852, the defendant Mumford commenced a foreclosure of the mortgage of Parsons to Potter, assigned to her as before stated, by advertisement under the statute ; whereupon the plaintiff commenced this action, and obtained an injunction against the sale in pursuance of the advertisement. The complaint contained a demand of judgment that the defendant Mumford deliver up the Parsons mortgage to be canceled. That the assignment of the said mortgage to her be adjudged fraudulent and void, and that Potter be directed to satisfy the same of record; or that the mortgage of $3000, made by Gorsline to Varick, be adjudged a lien on said farm and a valid security only to the amount which was actually paid to him by Varick at the time of its execution and delivery to Whittlesey, or for such other or further relief as might be equitable and just, &c. There were various other matters given in evidence, not necessary to be here stated.

The action was tried at the special term held in the county of Monroe, in January, 1856, before Mr. Justice SMITH, and a judgment rendered, in substance, that the mortgage executed by Parsons and wife to Potter was paid and satisfied in full, and that the defendant Mumford be perpetually enjoined from foreclosing or instituting any proceedings to enforce the payment of the same. That the assignment of said mortgage from the defendant Potter to the defendant Mumford, dated 2d July, 1849, be declared fraudulent and void and be set aside, and the record thereof canceled. That the defendant Potter execute, on request, a discharge of the Parsons mortgage. It was also adjudged that at the time of making the loan by the defendant Varick to the defendant Gorsline, Whittlesey was, and subsequently continued to be, the agent of Varick, and was bound by the contract and arrangement of Whittlesey in respect to said loan and the payment of Pot-

ter's mortgage. That Whittlesey, as the agent of Varick, on the 2d day of July, 1849, paid the balance due upon said mortgage to Potter, and thereby entitled Varick and Gorsline and those claiming under them to have the same discharged of record; and that the bond and mortgage executed by the defendant Gorsline to the defendant Varick were valid securities for the whole sum expressed in the condition thereof, with the unpaid interest thereon, and that the defendant Varick was entitled to collect the same. The justice before whom the action was tried made a special report of his findings of the facts, which, so far as is necessary, are referred to in the following opinion of the court at general term. The defendant Mumford appealed from this judgment.

The appeal was argued by

*S. Mathews*, for the defendant Mumford.

*H. S. Ives*, for the defendant Varick.

*John H. Martindale*, for the plaintiff.

*By the Court*, WELLES, J. The justice, at the special term, found that the money with which Whittlesey paid Potter the amount due on the Parsons mortgage was the money of the defendant Mumford, and was in his, Whittlesey's, hands for the purpose of investment. This, I think, was warranted by the evidence. Assuming that Mrs. Mumford is chargeable with knowledge of all the facts in relation to the transactions between Whittlesey, Varick and Gorsline, it was nevertheless competent for her to make Whittlesey her agent to invest her money, either with specific instructions as to the nature of the investment to be made and the particular securities to be taken, or with general discretionary power in those respects. It was competent for her to purchase the Parsons mortgage from Potter, with her own money, and to take an assignment of it to hold for her own benefit, as an investment of her

money or otherwise ; and this she could do through her agent Whittlesey, as well as personally, or through any other agent. In this respect, it makes no difference that it was the duty of Whittlesey, which he owed Varick and Gorsline, to pay off and discharge that mortgage, or that Mrs. Mumford is chargeable with knowledge of the transactions between them. It was not Whittlesey's duty to discharge the mortgage with *her money*, intrusted to him for another purpose and for her own use and benefit. But she is not so chargeable with notice, for the reason that those transactions were not connected with the subject matter of Whittlesey's agency for her. That agency had nothing to do with the obligations of Whittlesey to Varick and Gorsline, or either of them. Potter had a clear right to sell and assign the mortgage, and Mrs. Mumford an equally clear right to purchase it; and the facts, with notice of which it is claimed she is chargeable, transpired in his agency for other persons, with which facts and persons she was entirely disconnected. (*Story on Agency*, § 140. *Story's Eq. Jur.* § 408.) To hold her chargeable with knowledge of those facts and transactions, would be carrying the doctrine of constructive notice to an unwarrantable extent.

But it is contended that the legal effect of what took place between Whittlesey and Potter, was a payment and satisfaction of the Parsons mortgage. To this I cannot assent. It is quite probable, and I think the evidence warrants the conclusion, that Potter, at the time he received the payment, on the 2d July, 1849, supposed he was receiving it in satisfaction of the mortgage. But it does not follow that Whittlesey so intended. On the contrary, the fact that in the same interview, and before they had closed the business which brought them together, Whittlesey required an assignment of the mortgage from Potter, which the latter accordingly gave, is strong evidence to show that Whittlesey did not intend to satisfy the mortgage ; and the fact that Potter then executed the assignment, shows that whatever had been *his* intention in receiving the money, or his impression as to the effect of it, he ultimately

consented to give an assignment. It was not then too late. The payment was made by Whittlesey's check on the Commercial Bank of Rochester, and Whittlesey, in case of Potter's refusal to assign the mortgage, might have countermanded its payment. No receipt, satisfaction, acquittance, or other evidence of the payment, had been given. Suppose Whittlesey had told Potter, at that interview, and before the money was handed over, that he wished to pay the mortgage, and had accordingly counted out the money, and Potter had taken it into his hands, and had actually put it into his pocket, and thereupon it had been immediately agreed between them that the mortgage should be assigned, and Potter had executed an assignment to Mrs. Mumford; the question whether such payment should operate as a satisfaction of the mortgage would depend upon whether it was the duty of Whittlesey, in the character in which he was then acting, to satisfy the mortgage or to take an assignment of it. If he was acting as the agent of Varick and Gorsline, or of either of them, and had paid their money to Potter, he would be now held as having paid the money in satisfaction of the mortgage; if, as the agent of Mrs. Mumford, and with her money, she would be entitled to insist upon the validity of the assignment. But he was clearly acting in the character of agent for Mrs. Mumford. It was her money which he was charged with the duty of investing, and which he had no right to use for any other purpose than an investment for her; and which would be entirely defeated by regarding the payment in the light of a satisfaction of the mortgage. It is no answer, as it seems to me, that Whittlesey had some time before been placed in funds by Varick, sufficient to pay over the whole $3000 loan to Gorsline; and that he was consequently bound, under his agreement with the latter, to pay off and satisfy the mortgage from Parsons to Potter. It by no means follows, that because he had converted Varick's money to his own use, Mrs. Mumford should suffer by his defalcation; or that she was not at liberty to employ him as her agent to invest this money for her; nor is it im-

portant, under the circumstances of this case, that when Potter assigned the mortgage, the name of the assignee was left in blank. It was understood between Potter and Whittlesey at the time, that the latter should be at liberty to fill the blank afterwards, and it was of no consequence to Potter whose name should be inserted. It was an authority to Whittlesey to fill the blank with the name of any person he might choose, and was a matter in which neither Varick nor Gorsline had really any interest; nor is the indorsement on the bond of Parsons, made by Whittlesey, to the effect that the bond was not to be enforced against Parsons personally, but that resort was to be had only to the mortgage, any evidence of payment or satisfaction of either the bond or mortgage. The most that can be claimed for it is a release of Parsons' personal liability. The conversation between Whittlesey and the witness Thomas Parsons, as testified to by the latter, was improperly admitted in evidence. It should have been excluded as *res inter alios actu.*

In my judgment, the evidence shows a valid assignment of the Parsons mortgage to the defendant Mumford, which she is entitled to hold and enforce.

I agree with the learned justice at the special term, that the plaintiff is entitled to be relieved as against the Gorsline mortgage to Varick, to the amount due on Parsons' mortgage to Potter. The justice properly remarks that, "as between the plaintiff and the defendant Varick, the agreement of Whittlesey to pay off the Potter mortgage, and the retention of the money by him for that purpose, must bind the defendant Varick to see that mortgage discharged before the mortgage of Gorsline to him should become valid for the full amount of $3000. That this agreement was part and parcel of the contract of loan, and Varick must be held for its fulfillment, and must be held responsible as between him and Gorsline and the plaintiff, his grantee, for the fidelity of his agent."

The judgment of the special term should be modified, so as to declare the mortgage of Parsons to Potter a good and valid

security and lien upon the land and premises therein described, in the hands of the defendant Mumford, as assignee thereof, for the amount which it was given to secure, with interest according to its terms, deducting all the payments made thereon at the dates of such payments respectively, without regarding the payment made by Whittlesey to Potter on the 2d day of July, 1849, as a payment thereon; and requiring Varick either to pay off and have discharged of record the last mentioned mortgage, or credit on his mortgage from Gorsline the amount so due on the mortgage from Parsons to Potter, at his election, and to determine such election within thirty days after due service of an order of confirmation of the report of the referee hereinafter mentioned; and that it be referred to a referee, to ascertain and report the amount so as aforesaid due on the last mentioned mortgage up to the date of his report; and in case Varick shall neither make such payment or indorsement, then declaring the mortgage from Gorsline to him to be valid for such sum only as shall remain after deducting from the nominal amount thereof, the amount so due on the Parsons mortgage; and that the defendant Varick pay to the plaintiff and the defendant Mumford, or their attorneys respectively, their costs in the action, including the costs of this appeal.

[MONROE GENERAL TERM, December 7, 1857. *Johnson, Welles* and *Smith,* Justices.]