Van Vorst, J.
The application to the plaintiffs, on the defendants’ behalf, was for a loan on a “first mortgage.” Ho statem'ent was made to them that the premises were already incumbered by mortgage, or that any part of the sum for which a loan was asked, was to be used for satisfying an existing mortgage.
The plaintiffs had no actual knowledge of the prior incumbrance, until several months after the execution of the defendants’ mortgage to them. The plaintiffs’ agreement to make the loan, and the appropriation by by them of the $12,000, by their checks to the defendants’ order, was predicated upon their understanding that theirs was to be a first mortgage. It was therefore clearly the duty of the defendants to see to it, that the premises were unincumbered, and to this end to clear the premises from the existing incumbrance, before taking the plaintiffs’ money.
The facts indicate that it was within the contemplation of the defendant, to use the money, or a portion thereof, which the plaintiff had agreed to loan, for the purpose of discharging the first mortgage. But this intention was at no time communicated to the plaintiffs by the defendant or Levinger.
It is true that plaintiff referred Patzel, the defendant’s broker, to Levinger, as his attorney, to “examine the title,” preparatory to the completion of the loan. Levinger’s duty under this employment was to ascertain whether the defendant had an unincumbered title to the premises. This duty would be satisfied by reporting to the plaintiffs the result df his examination, so as to leave to the plaintiffs to determine whether or not the loan would be consummated. ■ But *25 no report of this incumbrance was, as it appears, made to the plaintiffs.
The employment by a person about to loan money, of an attorney or solicitor “to examine the title” of the premises, upon which a mortgage is to be made as security for the loan, does not necessarily make the attorney or solicitor the agent of the person employing him, to receive money from others, to pay off hens and incumbrances, or render him liable for the misappropriation of moneys so received.
The specific employment to examine a title does not, in itself, include the duty or obhgation of satisfying hens; it is discharged by fully ascertaining and reporting them. '
And if a purchaser is damnified by his solicitor neglecting to search for incumbrances, he may recover at law against the solicitor for any loss occasioned by his negligence (2 Sugden on Vendors, p. 677, § 77).
But to the duty of examining the title, may be added the farther one of discharging hens, with funds to be provided for the purpose, or out of which they may be retained.
An attorney-at-law may be furnished with moneys to invest by way of mortgage for his chent. In such case it may become part of his duty to pass upon the goodness of the security offered, and agree upon ah the conditions and terms of the loan, and to take ah necessary steps to the end that his chent shah receive a vahd security upon the premises, freed from ah incumbrances. In such case, under a general employment for such purposes, he would indeed be the agent of his principal, in respect to ah matters involved in such employment. And his principal, to whom a mortgage was by him delivered, as representing funds properly invested, might be held responsible to the borrower, for any funds kept back to satisfy prior incumbrances, and which the attorney did not discharge. Such was *26 the case of Graves v. Mumford (26 Barb. 94), to which I am referred by the learned counsel for the defendant. There Varrick, a resident of New York city, had entrusted moneys for investment on mortgage with one Whittlesey, at Rochester.
An application was made to Whittlesey, at Rochester, for a loan of $3000 by one Grossline. The loan was agreed to, and Whittlesey received the mortgage, but deducted from the moneys agreed to be loaned, the amount of a previous mortgage held by one Potter, which he undertook to pay and discharge with the moneys retained. Whittlesey forwarded the $3000 mortgage to Varrick, who was not informed of the particulars of the transaction, but he failed to discharge the prior incumbrance.
It was decided in that case, that the agreement of Whittlesey to pay off the Rotter mortgage, and the retention of the money by him for that purpose, bound Varrick to see that the mortgage was discharged, before the mortgage of Crossline to him- should become valid, for the full amount of $3000; “that this agreement was part and parcel of the contract of loan and Varrick must be held for its fulfillment, and responsible as between him and Crossline “for the fidelity of his agent.”
But in the case under consideration, the contract of loan was made, not with Levinger, but with plaintiffs themselves ; Levinger was entrusted with no money to invest, and had nothing to do with the conditions of the loan. Levinger’s sole duty was, as defendant was advised, to “search the title.” The sending of the bond by Levinger to the plaintiffs was in itself an assertion, that the title was good.
The plaintiffs so regarded it, and drew their checks for the amount of the loan, to the defendants’ order. The fact that the checks were drawn, not to Levinger, but to the defendants’ order, shows that the moneys *27 were designed for the defendants’ use, and not subject to Levinger’s control, unless by the defendant’s appointment. This was a clear intimation on the plaintiff’s part, that Levinger’s duty in examining the title did not include his actual handling of the money. When Levinger handed the checks to the defendant he did so with an understanding with him, that he should indorse and return one to him, with the avails of which, together with other funds to be added by defendant, the first mortgage was to be paid. In taking the custody and control of these moneys, I cannot think that Levinger was acting under any authority derived from plaintiffs, by his original or any subsequent employment or appointment. That he was liable to the plaintiff for not reporting, and for leaving unsatisfied an existing mortgage, fails to establish that he acted as the plaintiff’s agent, in receiving the check and money in question from the defendant, and entering into an engagement to perform a service therewith for him. The defendant was under no obligation to the plaintiffs to absolutely engage Levinger to this service. He could have himself personally paid the mortgage. No attorney was really needed for that purpose. He could have caused the holder of the mortgage to be present to receive the amount, when the checks were received. Or had he observed the caution of the plaintiffs, he would have specially indorsed the $6,000 check, and drawn his order for the residue of the first mortgage, to the order of the owner thereof. Had he done this, no loss could have fallen on him, and the plaintiffs would have received, what they have failed to get, a first mortgage on the premises. The defendant cannot, by his own act, although led to its performance by what Levinger said to him, constitute him an agent for the plaintiffs, without their consent at the time, or by their subsequent adoption, unless the duty enjoined was within the contemplation of the parties, *28 or expressly or by implication embraced witMn the power conferred.
But Levinger said to defendant “that he was not allowed to give the money until the first mortgage was paid off; and that he was to retain the money to pay off the first mortgage.” In mating the first part of this statement, he 'was but saying what was without doubt tiis duty to the plaintiffs. With knowledge of the existing incumbrance, of which, according to the evidence, the plaintiffs had not been advised, it was in no sense proper or allowable, to deliver the checks to the defendants, until the mortgage was in fact paid off. And yet, informed of this disability in Levinger, the defendants received the checks, and returned one to him so indorsed that he could personally control and apply to his own use the moneys. But the remainder of the statement, “ that he was to retain the money to pay off the first mortgage,’’contains its own answer, as it referred to the checks which he then held, and which he could not use in the form in which they were drawn, for that or any other purpose.
They must first go into the defendants’ possession, and then by their indorsement, they could in effect pass over the funds to Levinger, to be used for such purpose.
The case, it must be conceded, is a close one,—on the “border line.” It involves a strict construction of the obligation and duties of Levinger to the plaintiffs, under their employment of him, and also the distinct obligation under which he placed himself to the defendants in the course of the business. Although he was liable to the plaintiff for any infidelity, by which loss and damages were by them sustained, yet he was also responsible to the defendants, for the faithful discharge of the duty he had assumed in their behalf, and for the proper application of the moneys, through which the defendants intended to secure to the plaintiffs, what he had originally engaged, a “first mortgage” on the *29 premises. And in addition, for money “had and received” by Levinger to this end, he is liable to the defendants.
It may be that the plaintiffs are chargeable with constructive notice of the first mortgage, through Levinger’s knowledge acquired by the searches he made. But they were under no duty to pay it. Such constructive notice cannot visit upon them all the consequences of Levinger’s failure to discharge a duty to which he was appointed by the defendant. They do suffer, to the extent of having a second mortgage only. But the moneys which defendant claims in his answer, and upon the trial, not to have received upon the mortgage herein sought to be foreclosed, were actually appropriated to his order and use by the plaintiffs, and could have been actually applied, had he so willed and properly acted, to the payment of the first mortgage, and no damage would have been occasioned to either party. The defense, I think, is not established, and there must be a judgment of foreclosure.