RUTH A. JOHNSTONE, Appellant, *v.* SAMUEL HOROWITZ and SARA HOROWITZ, Respondents, Impleaded with KAROLINA WEIGL and Others.

Second Department, July 29, 1910.

**Principal and agent — embezzlement of funds received to discharge mortgage.— when loss falls upon mortgagee.**

The plaintiff, having been accustomed for some years to invest money on first mortgages through the medium of M., as her attorney, gave him a sum of money to make a loan secured by a first mortgage on lands owned by the defendant. She dealt with the defendant entirely through the medium of her attorney, M. As the defendant's property was already incumbered by two mortgages, in order to give the plaintiff a first mortgage, he agreed to apply the greater part of the loan in extinguishing one mortgage, and to obtain from the other mortgagee an agreement subordinating his lien to that of the plaintiff's mortgage. When the defendant and the plaintiff's attorney, M., met to carry out the transaction, M. stated that he himself would attend to the payment of the prior mortgage which was to be discharged, and after deducting the amount from the amount of the new loan he gave the defendant his personal check for the balance. M. did not discharge the prior mortgage, but converted the moneys and subsequently committed suicide. The mortgage which was to have been discharged imposed no personal liability on the defendant, being merely a lien upon his lands.

*Held*, that the attorney, M., when he retained the money and agreed to discharge the prior mortgage, was acting for the plaintiff, and that she must stand the loss. HIRSCHBERG, P. J., dissented.

APPEAL by the plaintiff, Ruth A. Johnstone, from a judgment of the Supreme Court in favor of certain defendants, entered in the office of the clerk of the county of Kings on the 31st day of August, 1909, upon the decision of the court, rendered after a trial at the Kings County Special Term, dismissing the complaint in an action brought to foreclose a mortgage, and reducing the amount of the mortgage.

*Charles J. McDermott* and *Thomas G. Flaherty*, for the appellant.

*C. W. Wilson, Jr.*, for the respondents.

Judgment affirmed, with costs, on the opinion of Mr. Justice CARR at Special Term.

WOODWARD, BURR, THOMAS and RICH, JJ., concurred; HIRSCHBERG, P. J., dissented.

The following is the opinion delivered at Special Term:

CARR, J.:

For a number of years the plaintiff invested considerable sums of money on first mortgages through the medium of one Murphey as her attorney. The details of the manner of investment were as follows: Murphey received the application from the intending borrower and submitted it to the plaintiff; her husband thereupon inspected the property and if the application was approved by him, Murphey received the amount of the proposed loan from the plaintiff and caused the title to be examined, closed the transaction and attended to all the details incident thereto. Sometimes he turned over the bond and mortgage to the plaintiff and at other times he retained them and collected the interest as it fell due, accounting to the plaintiff therefor. In late November, 1906, Murphey received an application from the defendant Horowitz for a loan of $4,500 on bond and mortgage on certain premises on Vandervoort Place in Brooklyn, the intended lien to be first mortgage.

Murphey submitted the application to the plaintiff who approved it and turned over to Murphey the sum of $4,500 to make this contemplated investment. On the examination of the title to these premises, some difficulty was encountered and the transaction fell through, no loan being made. The plaintiff allowed her money to remain with Murphey until another opportunity for investment should present itself. This opportunity came shortly thereafter through another application from Horowitz for a loan of $4,500 on first mortgage on premises on Melrose street, Brooklyn. The plaintiff's husband inspected the property and Murphey was authorized to make the loan. Neither the plaintiff nor Horowitz had ever met prior to this transaction nor until long after it was closed. The plaintiff dealt with Horowitz entirely through Murphey.

The premises on Melrose street were already incumbered with two mortgages, one for $3,000 as a first mortgage and a second mortgage for $1,400. Horowitz informed Murphey of the existence of these liens, and his plan was to discharge the first mortgage of $3,000 out of the proceeds of the new loan and to procure from the holder of the second mortgage of $1,400 an agreement subordinating that lien to the new mortgage of $4,500 which was to be

given to the plaintiff. The plaintiff had no information as to the existence of these liens. Murphey proceeded to have the title to the Melrose street property examined and on January 22, 1907, Horowitz, his wife and his attorney attended at Murphey's office for the purpose of closing the transaction. Horowitz and wife signed a bond and mortgage to the plaintiff for $4,500 falling due in three years, and delivered to Murphey an appropriate written instrument whereby the owner of the second mortgage for $1,400 subordinated her lien to that created by the bond and mortgage to the plaintiff. Murphey received the new bond and mortgage to the plaintiff and exhibited to the defendant Horowitz a written statement in which Horowitz was charged with the amount of the existing first mortgage of $3,000; the interest accrued thereon; the mortgage tax and the expense of the loan, showing a balance in favor of Horowitz in the sum of $1,267, for which amount Murphey then delivered his personal check to the order of Horowitz. The new mortgage was recorded by Murphey on January 24, 1907. At the time the transaction was closed on January 22, 1907, Murphey stated to Horowitz that he himself would attend to the payment of the first mortgage of $3,000. Murphey did not turn over the new bond and mortgage to the plaintiff, but sent her thereafter the sum of money representing the interest accruing on the full amount of the principal as having been received thereon. In April, 1907, Horowitz received a letter from the holder of the original mortgage of $3,000 demanding payment of the interest accruing thereon. This was the first time he learned that this mortgage was still outstanding after the transaction on January 22, 1907. He thereupon called upon Murphey for an explanation and was informed by him that he had not yet paid off this mortgage as he had not received the money for that purpose from his client. This statement was, of course, a falsehood, but whether Horowitz knew it was untrue does not appear nor does it appear that he had any knowledge of the method of business existing between the plaintiff and Murphey. Horowitz paid the interest accruing on the undischarged first mortgage to its holder, and thereafter paid Murphey the accruing interest on the Johnstone mortgage on the basis of an indebtedness thereon of $1,500. Horowitz had then no information as to the residence of plaintiff; Murphey having told him that she was traveling, and

that all interest payments were to be made at Murphey's office. Sometime thereafter Murphey committed suicide, and Horowitz sought out the plaintiff and she learned from him for the first time that her mortgage of $4,500 was not a first mortgage, as she had thought, and that Murphey had misappropriated the $3,000 which he had received for the purpose of discharging the original first mortgage.

The question now in controversy is which of these parties, the plaintiff or Horowitz, should bear the loss resulting from Murphey's dishonesty. The plaintiff asserts that the loss must fall upon Horowitz, on the theory that in retaining the money to discharge the original first mortgage Murphey became the agent of Horowitz. In support of this contention the plaintiff relies mainly upon two authorities in this State, viz., *Josephthal* v. *Heyman* (2 Abb. N. C. 22) and *Henken* v. *Schwicker* (67 App. Div. 196 ; 174 N. Y. 298). The defendant contends that Murphey remained the agent of the plaintiff throughout the whole transaction, and relies upon *Yeoman* v. *McClenahan* (190 N. Y. 121) and some earlier authorities.

The case at bar has some features closely resembling the facts which were before the courts in the various cases cited by the respective counsel, but there are such differences of facts that it cannot be said to be on " all fours " with any of them. All of these authorities, however, agree upon the rule that a controversy of this nature must be settled, if possible, by an application of the fixed rules of agency. Both of the parties to this action intended that the mortgage now in suit should be a first lien on the premises. That it is otherwise arises wholly from the misconduct of Murphey, and each are equally innocent. For whom was Murphey acting when he misappropriated the money? In the *Josephthal Case* (*supra*) the facts were quite similar, but there was one controlling circumstance in that case which does not appear here. There the lenders advanced the money, $12,000, which constituted the amount of the loan, by delivering to their attorney, one Levinger, two checks of $6,000, each drawn to the order of the borrower. After the delivery of the bond and mortgage the defendant indorsed one of the checks and redelivered it to Levinger, together with *his own check* for $1,245, which two checks made up the sum due on an outstanding mortgage which had to be

discharged to make the new mortgage a first lien. Levinger was the attorney for the lender only for the purpose of making the search and attending to the details of the closing. Levinger received the bond and mortgage and delivered them to the plaintiffs before they drew their checks. When they did - draw the checks it was to the order of the borrower, and no part of the funds could come into the hands of Levinger except by affirmative acts on the part of the borrower by indorsement and redelivery of one or more of the checks. The court held, in substance, that by receiving the checks for the full amount payable to his order, the borrower received the full consideration of his mortgage from the lender, and that by indorsing one of the checks generally and redelivering it to Levinger together with his personal check for $1,245 for the purpose of satisfying the outstanding lien, he made Levinger his own agent for that purpose and should stand the loss occasioned by Levinger's misconduct in appropriating the moneys so intrusted to his care. The court expressly differentiated the case from one in which the attorney was furnished directly with moneys for investment on bond and mortgage and based its decision principally on the fact that the plaintiffs had so drawn the checks that Levinger could not come into possession of any part of the funds unless by direct intervention of the borrower. The difference between the facts there and here is fundamental.

In the *Henken Case* (*supra*) the defendants had engaged a broker to negotiate a loan of $3,200 on bond and mortgage on certain real property already incumbered by three mortgages aggregating $3,000, for $1,600, $1,000 and $400 respectively. Out of the proceeds of the new loan the then existing liens were to be discharged. The broker applied to Henken for the new loan on the condition that it was to be secured by first mortgage. Henken viewed the premises and on condition that the new loan was to be secured by a first lien, gave his check to the broker for the full amount of the loan. The broker deposited this check to his own account. The borrower then came to his broker's office to find out if he had received the money. On learning that the money was in the possession of the broker, he signed the bond and mortgage and instructed the broker to apply the money to the satisfaction of the outstanding liens. The broker applied part of the money to the

discharge of the $400 mortgage and misappropriated the balance, leaving the mortgages for $1,600 and $1,000 outstanding and unpaid.

On the question whether the lender or the borrower should bear the loss occasioned by the dishonesty of the broker, it was held by both the Appellate Division and the Court of Appeals that the broker was the agent of the borrower at the time of the misappropriation and the loss fell on him. The case was decided on the principles of agency, but in the two opinions, that of the lower court and that of the Court of Appeals, there appears to be some difference in the rationale of the decision. In the opinion of the Appellate Division the court said that the broker was the agent of the borrower when he received a check from the lender. (67 App. Div. 200.) In the opinion of the higher court it is declared that when the broker received the check he became the lender's agent for the purpose of paying it over to the borrower, but became the borrower's agent when the bond and mortgage were delivered under instructions from the borrower to apply the money to the payment of the prior mortgages. (174 N. Y. 304.) Here again are differences of fact which if not fundamental are of great importance. In the case at bar, Murphey received the money not as the agent of Horowitz but while he was the agent of the plaintiff, and for use in an entirely distinct transaction. Horowitz gave him no instructions to retain any part of the money for any purpose. Murphey retained the money for the announced purpose of discharging the outstanding mortgage of $3,000, in order that the mortgage to his client should be the prior lien, as was bargained for between him and Horowitz. In so doing he was but following the customary line of conduct of almost daily happening in law offices. If in retaining this money for that purpose and in the manner indicated, he became the agent of Horowitz, it was by implication of law. That such implication cannot be made under these circumstances seems to this court quite plain. Horowitz was not the obligor on the outstanding first mortgage. It imposed on him no personal liability. It was a lien on his real estate, and it had to be discharged in order that the plaintiff might have a first lien under the new mortgage. There was no necessity of its being discharged by any direct act of Horowitz as it was overdue and the plaintiff

as a subsequent mortgagee upon the tendering of the full amount thereof could compel this discharge. When Murphey elected to retain the money for the purpose of discharging it himself, it was directly in furtherance of his duty to his client to procure a first mortgage for her. He might have adopted other means of effectuating this purpose, but he did not. When Horowitz took the check for the balance and approved the statement tendered by Murphey, he acquiesced in the retention of the money by Murphey as the plaintiff's agent in furtherance of the bargain of the loan. (*Graves* v. *Mumford*, 26 Barb. 94.) His consent to this proposed method of payment of the consideration of his bond and mortgage does not bind him where no payment has been made any more than if the plaintiff herself had retained the moneys and neglected to make the payment. In *Yeoman* v. *McClenahan* (*supra*), cited by the defendant, the facts are quite different, but the principle of decision is practically the same, *i. e.*, agency. It was said there, practically, that the *Henken* case is an authority only for its own facts, which, in truth, is simply only what any legal decision is.

It seems clear to this court that Murphey was the agent of the plaintiff at the time of the misappropriation and that the loss must fall on her. The defendant is entitled to a judgment reforming that part of the bond and mortgage which states the amount of the indebtedness at $4,500 by reducing it to the full amount actually received by Horowitz from Murphey, including the sums retained by Murphey for expenses and ratified by Horowitz, which amounts to the sum of $1,450.83. As the mortgage is not overdue, and the interest has been paid by Horowitz to the plaintiff on the amount of the actual consideration, the defendant Horowitz is likewise entitled to judgment dismissing the complaint on the merits.