### FATTA v. EDGERTON.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1911.)

1. PRINCIPAL AND AGENT (§ 23*)—RELATION—EVIDENCE—SUFFICIENCY.
   In an action by a mortgagor to cancel a bond and mortgage, evidence *held* to show that the attorney, who misappropriated the proceeds of the mortgage, and the mortgage broker, who placed the loan and turned the proceeds over to the attorney, were agents of the mortgagor.
   [Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 23.*]

2. PRINCIPAL AND AGENT (§ 159*)—LIABILITIES—CONVERSION BY AGENT.
   The principal, and not a third person, is liable for any loss caused by his agent's conversion of property which came into his hands by virtue of the relation of agency.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 599–613; Dec. Dig. § 159.*]

Appeal from Special Term, Erie County.

Action by Maria A. Fatta against George B. Edgerton to cancel and annul a mortgage. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Thomas A. Sullivan, for appellant.
Edward P. White, for respondent.

SPRING, J. The action is to cancel and annul a bond and mortgage given by the plaintiff to the defendant to secure the payment of the sum of $2,800. In November, 1903, Antonio Battaglia and his wife, the plaintiff, acquired the title as tenants by the entirety of premises situate on Seventh street in the city of Buffalo, and which were held subject to two mortgages, on one of which known as the "Utely mortgage," there was unpaid about $1,900, and on the other, designated the "Snyder mortgage," about the sum of $1,000. In November, 1908, the owner of the smaller mortgage demanded its payment. Domestic infelicities were disturbing the happiness of the Battaglia family, and one Fatta, now claimed to be the husband of the plaintiff, applied on

her behalf to Moses Day for a loan of $3,000 for the purpose of paying the two outstanding mortgages, then amounting to about $2,750. Fatta was a contractor and builder, and had previously obtained loans of money through Mr. Day, who was a real estate broker and lawyer, which had been secured by mortgages upon real estate owned by Fatta. Day examined the property and advised Fatta that he could obtain the sum of $2,800, to be secured by first mortgage upon the premises referred to, and he was requested to procure that sum. The plaintiff agreed to pay him 2½ per cent. commissions for procuring the money, and to pay the mortgage recording tax, the tax liens, and the incidental expenses in clearing up the record from liens, in order that the mortgage should be the first lien on the premises.

Day obtained the money of the defendant, for whom he had previously made loans on mortgage security. The defendant was apprised of the two existing mortgages, and gave Day his check for $2,800, payable to his order, expecting that these prior liens would be paid and his mortgage would be the first lien upon the premises, and that was also the expectation of the plaintiff. Day placed the money in the bank to his credit, and advised Fatta that he had it and was ready to close up the transaction. The bond and mortgage to the defendant for the sum of $2,800 were executed on December 12, 1908, by the plaintiff, and delivered to Day, who shortly thereafter delivered the same to the defendant, who believed the mortgage was the first lien upon the property. It seems that the $2,800 were inadequate to pay the outstanding liens and to carry out the agreement which the plaintiff had made with Day.

It will be necessary, in order to comprehend the condition of affairs, to present another series of facts. Battaglia, the husband of the plaintiff, had been arrested for a felony and released on bail, which was furnished by one Bellanca. In order to indemnify Bellanca against loss on the bond, the Battaglias conveyed the premises to him by deed, absolute on its face, although only intended as security. The grand jury did not indict Battaglia, and he was discharged, and the bail bond was canceled. In the meantime Battaglia commenced an action for absolute divorce against the plaintiff, and the judgment in his favor was entered January 21, 1909. Bellanca did not reconvey the premises, apparently because of the pending divorce action, and the plaintiff commenced an action against him and Battaglia to establish her title in the premises. The action was subsequently compromised upon the agreement that they would convey all their title and interest in the premises to the plaintiff upon the receipt of $800. Philip Fennelly, an attorney then practicing law in Buffalo, represented the plaintiff in the action by her, and made the adjustment in her behalf, and the $800 were paid to him by the plaintiff in order to carry out the agreement. A deed was executed by Bellanca and wife and Battaglia in supposed conformity to this arrangement, and delivered to Fennelly, who was named the sole grantee in it, and which was executed and delivered on the understanding on the part of the grantors that he would reconvey to the plaintiff, which he did, and the two deeds were recorded simultaneously. After a time Fennelly paid $400 to the attorney for Battaglia in payment for his interest in the premises; and, without the knowl-

edge of the plaintiff, gave Bellanca a mortgage for a like sum, which was accepted as security for the balance of the $800. An unrecorded deed to said Fennelly of said premises was received in evidence, dated February 25, 1909, executed by the plaintiff and acknowledged February 27th, and the judgment in this action properly sets aside this conveyance on the ground that it was procured fraudulently.

The chief importance of these facts, not directly connected with the transactions between the parties to this action, is because of their bearing on the closeness of the relation of attorney and client subsisting between Fennelly and the plaintiff, and indicating the extent to which she entrusted him with the management of her affairs. Mrs. Fatta, or her husband acting for her, paid to Fennelly sufficient money, including the avails of the mortgage to the defendant, to pay all the outstanding liens prior to the said mortgage, and so advised Day. Day paid the tax liens, the recording tax, his own commissions, and some other expenses incident to the matter, and early in March paid over to Fennelly the balance of the $2,800, amounting to $2,488.66, which, it was expected, would be used in paying and canceling the outstanding liens. Fennelly paid the Bellanca mortgage of $400, the Snyder mortgage, amounting to $910, and received an assignment in blank of the latter, executed by the mortgagee, but never paid any part of the Utely mortgage. The parties to the action believed this mortgage had also been paid.

In December, 1909, the plaintiff gave to Fennelly $163 to pay the interest on the bond and mortgage in suit, which he paid. She learned the Utely mortgage had not been paid in full, and her husband, in her behalf, paid to Fennelly $160 in February, 1910, which was represented to her as the amount necessary to pay the balance unpaid on that incumbrance; but the same was not applied on that mortgage. Fennelly thereafter left the state, a fugitive from justice, and his affairs were badly entangled. The Utely mortgage remains unpaid, and the court has determined that both Fennelly and Day, in the crucial transactions of the payment over and receipt of the money which was paid to Day by the defendant, were the agents of the defendant, and not of the plaintiff; that the payment of the Snyder mortgage by Fennelly inures to the benefit of both parties; and that, as the "proposed loan of $2,-800 by the defendant to the plaintiff was never made," only the mortgage can be enforced to the extent of the sum paid to secure the cancellation of the Snyder mortgage, and the plaintiff is entitled to recover back the interest which she paid on the defendant's mortgage.

I cannot assent to the conclusions reached. The undisputed facts, it seems to me, establish that Fennelly was the agent of the plaintiff, and not of the defendant. He was her trusted attorney in whatever legal matters she had. She intrusted him with her money, and as soon as it became apparent that the sum which the defendant would loan to her was inadequate to pay the outstanding incumbrances, she applied to Fennelly and paid to him sufficient, with the $2,800, to pay these prior liens, in order that the mortgage to the defendant should be the first lien upon the premises. While the court has found specifically that Fennelly was not the agent of the plaintiff, and the judgment so recites, he has also found at the request of the defendant as follows:

"Thirteenth. That the said Philip V. Fennelly was the ·attorney for the plaintiff in all matters relating to clearing up the title and mortgages on said premises. Found. W."

And again:

"Twentieth. That thereafter, and on or about June 7 or 8, 1909, the said Philip V. Fennelly, as the agent or attorney of the plaintiff, paid to Ole L. and Ora L. Snyder the sum of $850 in satisfaction of the so-called Snyder mortgage; that he took an assignment of such mortgage in blank; that said assignment inured to the benefit of the plaintiff in this action; and that the parties to this action are entitled to have the said bond and mortgage discharged of record by reason thereof. Found W."

Fennelly did not have in his custody sufficient moneys of the plaintiff to pay the Snyder mortgage, as she well knew. In order to pay that mortgage, he must have some of the avails of the loan made by the defendant. If he represented "the plaintiff in all matters relating to clearing up the title and mortgages on said premises," he must have possessed the authority to receive the money to make his agency effective. He could not be expected to procure the cancellation of these mortgages unless he was provided with money sufficient to accomplish that purpose. The plaintiff did not furnish it to him. ·She knew that these mortgages must be paid out of the moneys derived from the defendant. There was nothing to the authority of Fennelly "relating to the clearing up of the * * * mortgages," if he was to pay over to Day the money he held for the plaintiff and Day was expected to pay the mortgages. If that was the essence of the arrangement, the plaintiff or Fatta would not have paid the money to Fennelly, or would have obtained it from him for Day.

The defendant knew nothing of the connection of Fennelly with the clearing up of the title or the extinguishment of the prior mortgage liens. He paid the money to Day, and was interested in only one matter, and that was obtaining a first mortgage, with the accompanying bond, for the money he loaned. We may assume that he was willing and expected that Day would use the money in paying the prior liens. He did this for the accommodation of the plaintiff, instead of requiring that the discharges should be produced before the money was furnished at all; but there is nothing in his conduct suggesting that he imparted any authority to Fennelly.

Let us consider Day's connection with the transactions. The plaintiff solicited Day to obtain the money for her. His compensation in her behalf was agreed upon. The rate of interest, the discharging of the existing liens, so that the new mortgage would be the first lien on the premises, and the payment of the expenses and recording tax, were all arranged between Day and Fatta, who was in charge for the plaintiff. In the initial transaction, therefore, Day was the agent of the plaintiff. The defendant gave Day the check for $2,800, and, as he was to have first mortgage security on the premises, the inference may be that he endowed the broker with the authority to accomplish that purpose by paying the prior liens; but the presentation of their discharge was· to be simultaneous with the payment over of the money. With matters in that condition, Fatta interfered. He assumed the money in the custody of Day belonged to the plaintiff, undertook the

burden of clearing up the record, and directed Day how the money was to be disposed of.   He testified:

"When I came there the second time I claim the papers were executed, I claim the bond and mortgage were left there.   When they were signed, I left them there with Mr. Day.   I claim at that time that Day told me that he had placed money.   He told me he had placed it.   *I asked him then to clear up this title for me, for me and Mrs. Fatta—Mrs. Battaglia at that time.   I directed him what he should do with that money.   I told him that time, and the first time, when I asked him to place this mortgage, I explained to him very plain.*"

If Day, in the expenditure of this money, was representing only the defendant, why the interference and direction of Fatta?   The plaintiff realized that she must clear up the title, and she at once accepted the responsibility and "explained to him very plain" the manner in which Day was to act for her.   Even if he did pay over the money to Fennelly without her authority and contrary to the plans she had mapped out, he was her representative in the disposition of the money.   If he overstepped the bounds she prescribed, he did it in an attempted performance of the obligations she imposed upon him.

I realize that the plaintiff and Fatta testified that they told Day the money was to be paid to him by Fennelly.   Day, on the contrary, testified that he paid the money to Fennelly, because he was directed to do so by the plaintiff and her husband.   There is no importance to this question of fact, inasmuch as the plaintiff directed the manner of disposing of the money.   She made Day her agent, and, if there was any dereliction of duty in the execution of the authority conferred, she must stand the consequences, not the defendant.   Henker v. Schwicker, 174 N. Y. 298, 66 N. E. 971.

The respondent relies upon Yeoman v. McClenahan, 190 N. Y. 121, 82 N. E. 1086, and Johnstone v. Horowitz, 139 App. Div. 800, 124 N. Y. Supp. 689.   In the first case mentioned, which was an action to foreclose a mortgage, the plaintiff paid the money for the mortgage loan to a trusted employé, directing him to procure a first mortgage on the premises, which may have carried with it the obligation to discharge the prior liens out of this money.   The agent solicited the loan of the defendant, and, before the transaction culminated, misappropriated the money.   The facts demonstrated that the broker exclusively represented the lender, and no assertion of authority over him was exercised by the borrower.   In the other case, the agent, who converted the money, advised the owner that he would procure the discharge of the outstanding liens, which he failed to do, and again the facts show that his authority was from the lender alone.

While the Fattas testified that they directed Day to get the money from Fennelly, which the latter held for the plaintiff or Fatta himself, the history of their dealings with Fennelly is not consistent with their story.   There was no suspicion or apprehension of untrustworthiness on the part of Fennelly.   They were intrusting him with money for nearly a year after this, and down to the time he absconded.   The only reason for directing Day to get the money from their own attorney would be lack of confidence in his integrity, and they were trusting him implicitly at this time.

In order the better to determine the relations of Day and Fennelly, or either of them, to the respective parties, it is essential to compass all the facts leading up and pertaining to the payment of the money to Fennelly by Day. The legitimate deductions from these facts, I think, satisfactorily establish that both Day and Fennelly represented the plaintiff. However, if either was her agent in getting this money into the hands of Fennelly, the plaintiff cannot recover.

The judgment should be reversed.

Judgment reversed, and a new trial granted on the law and facts, with costs to the appellant to abide event. All concur.