(157 App. Div. 852.)

## FATTA v. EDGERTON.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1913.)

1. PRINCIPAL AND AGENT (§ 69*)—DUTIES OF AGENT—AGENT TO DISCHARGE MORTGAGE—TAKING ASSIGNMENT IN OWN NAME—EFFECT.

Where plaintiff's agent, in paying off prior mortgages on property, so as to make the mortgage given by plaintiff to defendant a first lien as agreed, instead of having the mortgage discharged, took an assignment in blank, the assignment inures to the benefit of plaintiff, and both plaintiff and defendant are entitled to have it discharged of record.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 130–145; Dec. Dig. § 69.*]

2. PRINCIPAL AND AGENT (§ 105*)—PAYMENTS TO AGENT—MISAPPROPRIATION BY AGENT—EFFECT.

Where money loaned on a mortgage was paid to the agent of the mortgagor for that purpose, who misappropriated it, the mortgagor must stand the loss, rather than the mortgagee, though the agent of the mortgagee in paying the money to the mortgagor's agent had failed in his duty to the mortgagee to see that the money was properly applied.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 298–310, 374; Dec. Dig. § 105.*]

3. PRINCIPAL AND AGENT (§ 23*)—EXISTENCE OF AGENCY—SUFFICIENCY OF EVIDENCE.

Evidence in an action to cancel a bond and mortgage *held* to show that one to whom the mortgagee paid the money loaned on the mortgage, and who misappropriated it, was the agent of the mortgagor to receive the money.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 41; Dec. Dig. § 23.*]

Foote, J., dissenting.

Appeal from Trial Term, Erie County.

Action by Maria A. Fatta against George B. Edgerton. From a judgment for defendant (137 N. Y. Supp. 226), plaintiff appeals. Affirmed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Cleveland G. Babcock, of Buffalo, for appellant.
Thomas A. Sullivan, of Buffalo, for respondent.

KRUSE, P. J. The action is brought to cancel a bond and mortgage, executed by the plaintiff to the defendant to secure the payment of $2,800, covering certain premises situate in the city of Buffalo, upon the ground that the moneys, the payment of which the bond and mortgage were intended to secure, were not applied by the defendant as agreed between the parties. The action has been twice tried. Upon the first trial the plaintiff succeeded, but upon appeal to this court the judgment was reversed and a new trial ordered. 143 App. Div. 658, 128 N. Y. Supp. 181. Upon the second trial, plaintiff's complaint was dismissed, and she appeals.

The plaintiff contends that the evidence on the last trial differs from that on the first trial. I think there is not enough difference to require or warrant a conclusion different from that reached by this court on

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the former appeal. The opinion on the former appeal was written by the late Justice Spring and concurred in by all of the other justices. It states very fully and in detail the various circumstances which led to the conclusion there reached, and need not be again stated here, beyond a bare outline.

[1] The plaintiff, or her husband, acting for her, applied to Moses T. Day, a lawyer, for a loan upon the property, agreeing to pay him 2½ per cent. commission. Day procured the loan from George B. Edgerton, the defendant, with the understanding that the mortgage would be a first lien. Edgerton paid the amount of loan to Day. After the bond and mortgage in question were executed, they were delivered to Phillip V. Fennelly, another lawyer, by plaintiff. Day paid over to Fennelly the amount of the loan, except such part as represented Day's commissions and other charges; the amount so paid over being $2,488.66, which was to be used in clearing the title and discharging the prior mortgages. Among other claims against the property, at the time the bond and mortgage in question were executed, were two mortgages, one known as the Utley mortgage, and another known as the Snyder mortgage. Fennelly used $400 to pay an unrecorded mortgage (not one of the two referred to), and the further sum of $850 to pay the Snyder mortgage. The balance of the money he kept, leaving the Utley mortgage, upon which there was unpaid about $1,900, unsatisfied. Fennelly did not have the Snyder mortgage discharged, but took an assignment in blank. The trial judge finds, however, that the assignment inured to the benefit of the plaintiff, and that both parties to this action are entitled to have the mortgage discharged of record.

[2] It is contended on behalf of the plaintiff that the testimony of the defendant himself, who was not sworn upon the first trial, but testified upon the second at the instance of the plaintiff, as well as Day's own testimony upon the second trial, shows that he (Day) was acting as the agent for the defendant. While Day was the agent of the defendant to the extent of seeing that the defendant's mortgage was a first lien upon the property, it does not follow that because Day violated his obligation to the defendant, and disobeyed his instructions, and paid over the money before the title was clear, defendant must bear the loss occasioned by the misappropriation of the money by Fennelly. Even if Day's agency for the plaintiff was limited to procuring the loan, and his agency for the defendant extended to the proper distribution of the money, if Fennelly was her agent for ultimately receiving and distributing the money, or she so held him out, or consented to the payment thereof by Day to Fennelly, as I think the evidence shows, she should bear the loss of Fennelly's misdoings, rather than the defendant.

The plaintiff, as well as the defendant, understood that the defendant's mortgage was to be a first lien upon the property. She also knew that the amount loaned was not sufficient to meet all the prior liens and incumbrances upon the property. She knew that the money had been paid to Fennelly, and with that knowledge caused a sufficient sum to be placed in his hands, in addition to what had been turned over to him, to procure the satisfaction and discharge of the Utley mortgage.

[3] While Day did testify upon the first trial, as plaintiff's counsel urges, that the plaintiff's husband told him to pay the money over to Fennelly, that Fennelly was acting for him and his wife, and testified finally on the second trial that he could not swear that the plaintiff's husband told him in so many words to pay over the money to Fennelly, he did insist that the husband told him that Fennelly had the matter of clearing up the title in his hands, and to go over and close up the matter with Fennelly. I think his testimony in that regard is corroborated by other circumstances, as will be seen by referring to the opinion on the former appeal. The decision of the case did not necessarily turn upon the question as to whether or not Day represented the plaintiff. It was there held that, if either Day or Fennelly was her agent in getting the money into the hands of Fennelly, the plaintiff cannot recover. To that ruling we adhere, and upon the evidence hold that in receiving and distributing the money Fennelly represented the plaintiff, and not the defendant.

Of course, the defendant expected, and it was a duty which Day owed to the defendant to see, that all prior liens against the premises were discharged, so that his mortgage would be a first lien; but his failure so to do cannot properly be urged as a reason for making the defendant also liable for the misconduct of Fennelly.

I think the judgment should be affirmed, with costs.

ROBSON, LAMBERT, and MERRELL, JJ., concur.

FOOTE, J. (dissenting). Day admits on this trial that he had no express authority from plaintiff or her husband to pay over the money to Fennelly, nor does it appear that Fennelly had authority from plaintiff to receive it. No such authority should be implied. Day's admission removes the essential basis of our former decision, and brings the case within the rule of Graves v. Mumford, 26 Barb. 94, Johnstone v. Horowitz, 139 App. Div. 800, 124 N. Y. Supp. 689, and Yeoman v. McClenahan, 190 N. Y. 121, 82 N. E. 1086.