(78 Misc. Rep. 99.)

MORSE et al. v. KELSEY et al.

(Supreme Court, Special Term, New York County. October, 1912.)

1. HUSBAND AND WIFE (§ 74*)—DISABILITIES OF COVERTURE—MORTGAGE.

A husband, after a second mortgage on real estate of his wife had been paid, satisfied, and discharged, procured from her another bond and mortgage payable to the same mortgagee, and obtained an assignment thereof from the mortgagee, but neither the mortgage nor the assignment was recorded. Several years later, cotton brokers accepted the bond, mortgage, and assignment as security for an indebtedness of the husband, on an agreement not to record them. On the husband's failure on request to substitute negotiable collateral for the bond and mortgage, the mortgage and assignment were placed on record, and the wife and mortgagee notified by the cotton brokers that, unless the husband's debt was paid, they would sell the bond, mortgage, and assignment at public auction. At the sale, pursuant to such notice, the wife's attorney read a notice that the bond and mortgage were not made and delivered for value, that no consideration was paid therefor, that no interest had ever been paid thereon, and that she had good defenses thereto, both at law and in equity. In an action by the cotton brokers, as purchasers at the sale, to foreclose the mortgage, there was no evidence that the wife intended to give the bond and mortgage to her husband, nor that she was ever paid anything therefor. She testified that she was ignorant of business, and executed the papers at her husband's request without reading them. *Held,* that the wife is entitled to judgment dismissing the complaint, with direction that the mortgage and assignment be delivered to her and canceled.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 309–312; Dec. Dig. § 74.*]

2. HUSBAND AND WIFE (§ 25*)—AGENCY OF HUSBAND FOR WIFE—EVIDENCE.

Possession by a husband of a mortgage executed by his wife to a third person and assigned to the husband does not raise a presumption of authority to convert them for his personal benefit, and she is not estopped, by her testimony on cross-examination that she left all business matters to her husband, from denying his authority to transfer the bond and mortgage.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 148–154; Dec. Dig. § 25.*]

Action by Charles A. Morse and another, doing business under the style of Chas. A. Morse & Co., against Carolyn T. Kelsey and others, to foreclose a mortgage. Judgment dismissing complaint.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Kearny & Dickinson, of New York City, for plaintiffs.

Herbert S. Ogden, of New York City, for defendant Carolyn T. Kelsey.

O'Gorman, Battle & Marshall, of New York City, for defendants Charles B. Kelsey and another.

PAGE, J.   During the year 1910 the defendant Charles B. Kelsey traded with the plaintiffs, who were engaged in a brokerage business, buying cotton for future delivery upon a marginal account.   In December, 1910, the plaintiffs called upon Charles B. Kelsey for additional margins.   On or about January 5, 1911, Charles B. Kelsey proposed to the plaintiffs that they should take as security for his account a mortgage, which he stated was upon his house, for $10,000, and which he had in his safe.   He afterwards brought to the plaintiffs a bond and mortgage for $10,000, a lien upon the premises in which he resided, executed by his wife, Carolyn T. Kelsey, to Joseph N. Carpenter, dated May 23, 1908, and an assignment thereof in blank, executed by Carpenter on the 12th day of July, 1909.   Neither the mortgage nor the assignment had been recorded.   The plaintiffs accepted the bond and mortgage and assignment, agreeing not to record the mortgage and assignment.   Charles B. Kelsey continued to trade with the plaintiffs, and the debit balance of his account, that in December, 1910, was about $2,000, had increased to $7,678.50 on April 30, 1911, at which time the account was closed.   The plaintiffs during February and March had requested Charles B. Kelsey to take up the bond and mortgage and substitute negotiable collateral in its place, and notified him that if this was not done on or before April 1, 1911, they would record the mortgage and assignment.   On April 7, 1911, the mortgage and assignment were recorded.   On June 11, 1911, the plaintiffs sent a notification in writing to Carolyn T. Kelsey and Charles B. Kelsey that they would sell the bond, mortgage, and assignment at public auction, at a time and place therein specified, unless the debt of Charles B. Kelsey to them was paid.   The sale was adjourned from time to time until August 23, 1911, when it was sold to plaintiffs for the sum of $1,625.   At the sale Mr. Ogden, attorney for Mrs. Kelsey, read a notice that the bond and mortgage were never made and delivered for value, that no consideration was paid therefor, that no interest had ever been paid thereon, and that she had good, valid, and sufficient defenses thereto, both in law and in equity.   The plaintiffs bring this action to foreclose the mortgage, as purchasers thereof, for the full amount of the bond and interest.

[1] Even if this transaction were a valid pledge of the bond and mortgage, on default of payment of the debt the creditor should have realized on the collateral in the manner contemplated by the parties, by a foreclosure and sale under the mortgage.   Where the collateral pledged is personal property, stock, or bonds, which are commonly dealt in or have an intrinsic value, a sale of the collateral on default is the only way in which money can be realized to be applied upon the debt; but, when the pledged collateral is a chose in action for the payment of money (bills, notes, or bond and mortgage), a sale must

almost invariably result in a sacrifice of the security, whereas by enforcing the obligation its true value will be ascertained, and the amount realized by the means contemplated by the makers will be applied upon or in satisfaction of the principal debt. Wheeler v. Newbould, 16 N. Y. 392, 397. The injustice of allowing the pledgee to sell the bond and mortgage and apply the proceeds of such sale upon the debt is strikingly demonstrated in this case. The bond and mortgage were purchased by the plaintiffs for $1,625, and they now ask a judgment of foreclosure and sale for $10,000 and interest. Should the property bring the face of the mortgage, the plaintiffs would receive in cash $12,400 on the collateral, reduce the principal debt only by the $1,625, and have a right of action on the original debt for $6,000 and interest. Notwithstanding the sale, the bond and mortgage are in the hands of the original pledgees. Therefore holding the sale to be null and void leaves the parties in statu quo ante, without interfering with the rights of third parties. The bond and mortgage were concededly not executed and delivered by Mrs. Kelsey with the intent that they should be pledged for the debt of Mr. Kelsey to these plaintiffs, for they are dated long prior to Dr. Kelsey's dealings with the plaintiffs.

It becomes important to consider under what circumstances the bond, mortgage, and assignment were executed, by what means they came into Dr. Kelsey's possession, and how far Mrs. Kelsey was bound by his act in pledging them with the plaintiffs for his own debt. When Mrs. Kelsey purchased the premises, No. 44 East Twenty-Ninth street, she borrowed $10,000 from a relative, Mr. Carpenter, giving him a second mortgage on the premises as security. This was paid, satisfied, and discharged of record. Dr. Kelsey procured from his wife another bond and mortgage payable to Carpenter, and a year subsequently obtained the assignment in blank from Carpenter, by stating to him that it was desired to keep his bond and mortgage alive, and not to satisfy it. These papers were then placed by Dr. Kelsey in a safe in the house, where they remained until he took them to the plaintiffs. It is sought to hold Mrs. Kelsey liable on one of two theories: First, that the bond and mortgage became the property of Dr. Kelsey; or, second, that as agent of Mrs. Kelsey he was authorized to pledge them as collateral security.

The first theory is worthy of scant consideration. There is not a scintilla of evidence that Mrs. Kelsey intended to give the bond and mortgage to her husband. The fact that it was made payable to Carpenter would seem to controvert that assumption. Nor was it claimed that Mrs. Kelsey was ever paid $1 on account thereof. She stated that she knew nothing of business, and she executed the papers at the request of her husband, without reading them.

[2] The further question of how far she is chargeable as principal for the acts of Dr. Kelsey as her agent is somewhat more difficult. The plaintiffs claim that they acted, relying upon Dr. Kelsey's apparent authority as his wife's agent; that leaving the bond and mortgage in his possession gave him the apparent authority to deal with it; and, if he dealt wrong with it, that she, who, either by her act or careless-

ness, had clothed him with apparent authority, must suffer the loss, rather than the third party, who had been thereby misled. But this is true only when the agent is acting apparently in the business or affairs of the principal, as where money is loaned on bond or mortgage to an agent or attorney, to whom the papers had been delivered, and he misappropriates the proceeds. Henken v. Schwicker, 174 N. Y. 298, 66 N. E. 971; Fatta v. Edgerton, 143 App. Div. 658, 128 N. Y. Supp. 121. In the case at bar Dr. Kelsey did not purport to negotiate the mortgage for or on behalf of his wife, nor did he offer it as security for her debt; but he sought to pledge it for his own debt and benefit.

I know of no case that holds that a presumption arises, merely from the possession of the property of another, that the person is authorized to convert it for his personal benefit. Neither the bond and mortgage nor the assignment on their face appeared to have been executed for the purpose of the transaction in which they were sought to be used. There was sufficient on their face to excite suspicion as to their use. They were dated two years or more prior to the time they were offered to plaintiffs, and they had never been recorded. They were offered as security for a speculative account of Dr. Kelsey's, in which it is not claimed that Mrs. Kelsey had the slightest interest. There certainly was sufficient to put the plaintiffs upon inquiry. They cannot accept the papers offered, closing their eyes to the suspicious circumstances attendant upon the transaction, when the slightest inquiry of Mrs. Kelsey would have disclosed the entire lack of authority in Dr. Kelsey to use the papers in the manner in which he did, and then call upon a court of equity to save them from the effects of their own willful blindness or careless heedlessness.

There was no subsequent ratification in any manner by Mrs. Kelsey of this unauthorized act, which distinguishes the case from Rothschild v. Title Guarantee & Trust Co., 204 N. Y. 458, 97 N. E. 879. Nor was any act of hers shown that would estop her from asserting the invalidity of the transaction. Plaintiffs' counsel argues, from her answer to a question, on cross-examination, that she left all business matters to her husband, that by this course of dealing she was estopped from denying his authority. But no course of dealing was shown of which they had knowledge prior to this transaction. It is necessary to show a course of dealing, known to the third party at the time he acted, and in reliance upon which he acted, in order to estop the person sought to be charged as principal from denying the authority that the course of dealing would imply. I find, therefore, that Dr. Kelsey had no authority, express or implied, to pledge the bond and mortgage and assignment to the plaintiffs, and that the defendant Carolyn T. Kelsey is entitled to judgment in her favor, dismissing the complaint, with costs, and further directing that the bond, mortgage, and assignment be delivered to her and canceled.

Judgment dismissing complaint.