(67 App. Div. 196.)

HENKEN et al. v. SCHWICKER et al.

.(Supreme Court, Appellate Division, Second Department. December 23, 1901.)

REAL ESTATE AGENTS—REAL ESTATE LOANS—AGENT FOR BORROWER—PAYMENT
    TO AGENT—MORTGAGES.
        Defendant applied to a real estate agent for a mortgage loan. Three unsatisfied mortgages were to be paid with the proceeds of the loan. Plaintiff agreed with the agent to make the loan, and gave the agent a check for the amount, taking a mortgage on the property, the agent assuring him that he would search the title, and see that plaintiff had a first mortgage, but not informing him of the outstanding incumbrances. On execution of the mortgage defendant instructed the agent to pay off the three outstanding mortgages with a part of the money in his possession. The agent paid off one of the three mortgages only, and appropriated the rest of the money. *Held*, that the payment of the amount of the loan to the agent was a payment to him as agent of defendant, and a finding that plaintiff had kept back a part of the loan equal to the amount of the two prior unsatisfied mortgages was error.

Goodrich, P. J., and Woodward, J., dissenting.

Appeal from trial term, Kings county.

Suit for foreclosure of a mortgage by Ernst Henken and another against Frederick Schwicker and another. From a judgment of foreclosure, plaintiffs appeal. Reversed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

A. F. Van Thun, Jr., for appellants.

John A. Straley, for respondents.

HIRSCHBERG, J. There is practically no dispute about the facts. The defendant Frederick Schwicker, desiring to borrow the sum of $4,000, applied to a real estate agent named Dreher to procure the loan for him. It was agreed between them that the application should be made for $4,200, the additional $200 to be applied in payment of Dreher's commission for services in the transaction. Of the money to be borrowed $3,200 was to be secured by bond and mortgage upon the real estate in question in this action, and with that amount alone are we concerned. That real estate was then incumbered with three mortgages, amounting, respectively, to $1,600, $1,000, and $400, or $3,000 in all; and it was Schwicker's intention that they should be paid and discharged with the borrowed money, so that whoever loaned him the $3,200 should have a first lien upon the property. Dreher applied to the plaintiff Ernst Henken to make the loan, and after they had visited the property together the plaintiff agreed to lend the money, and for that purpose gave Dreher his check for the $3,200. Thereafter the defendant Schwicker executed the bond, and he and his wife executed the mortgage to secure the money to the plaintiffs, Henken and wife, and, after Dreher had procured the mortgage to be recorded, the papers were delivered by him to Henken. Henken understood that he was to have a first mortgage, and Dreher assured him, in effect, that he (Dreher) would search the title, and see to it that he got a first mortgage. At the time Schwicker executed the bond and mortgage to the plaintiffs, he took from Dreher a receipt for the $200 commission, and instructed him to pay off the three mortgages with the balance of the money; Dreher informing him at the time that he had the money, but would have to hold it to protect the man who loaned it. Dreher paid off the $400 mortgage only, appropriating the rest of the money to his own use, and leaving the other two mortgages, amounting to $2,600, · still unpaid and outstanding. The plaintiffs and defendants never met in the transaction, it being all consummated by Dreher. He testified that he acted solely as agent for Schwicker, and not at all for Henken, unless his engagement to search the title be so regarded. He already knew all the record would disclose, having been informed by Schwicker of the facts in relation to the three mortgages at the time he was employed to procure the loan. He did not inform Henken, however, that the property was then incumbered, nor is there any evidence that Henken knew at that time of the existence of the three mortgages. Schwicker paid Henken the interest on the $3,200 mortgage regularly, through Dreher, for a number of years,

and until shortly before the commencement of this action. The action is brought to foreclose the $3,200 mortgage, not as a first mortgage, as the parties intended it to be, but as one subject to the two prior mortgages, which Dreher was expressly instructed by Schwicker to discharge, but which he failed to do. The answers allege that the plaintiffs withheld from the mortgage money the sum of $2,600 for the purpose of satisfying and discharging of record the two prior mortgages, and that they (the plaintiffs) failed to pay off, satisfy, and discharge the same, but retained, and still retain, this money in their possession.

Upon these facts and that issue the learned trial justice at special term has found that:

"The mortgage sought to be foreclosed in this action and the bond accompanying the same were executed and delivered to the plaintiffs herein by the defendants Schwicker upon the express understanding and agreement that the same were to be held-by these plaintiffs upon condition that they apply three thousand dollars towards the payment of existing liens upon said premises described in said mortgage, and two hundred dollars towards the payment of the fees of one Christian W. C. Dreher, and that these plaintiffs applied six hundred dollars only of said thirty-two hundred dollars for the purpose of said contract and in pursuance to their agreement, whereby, to the extent of twenty-six hundred dollars, there was a failure of consideration as to these defendants Schwicker; and the said bond and mortgage were valid and effectual as against defendants Schwicker to the extent of said six hundred dollars actually advanced, with interest from the 1st day of May, 1899, and no more."

There is not only no evidence to sustain this finding, but no possible intelligent inference can be drawn from the evidence in support of it. The plain and undisputed truth is that, Schwicker having sent Dreher out into the world to borrow $3,200 for him, Henken, when applied to, at once, and without any security whatever, loaned the money, and paid it over, every dollar, into Dreher's hands. The allegations in the answers that $2,600 of the money was withheld by the plaintiffs, and that they still retain the same in their possession, are disproved, not only by the production of the check, but by the evidence of every witness examined on either side. Henken paid all the money into the hands of the agent whom Schwicker had hired and paid to demand and receive the same. It was precisely the same as though Henken had given it directly to Schwicker. Dreher promised nothing which Schwicker would not have promised, and nothing which Schwicker had not expressly instructed him to promise. Schwicker intended that the mortgage should be a first lien, and that to that end the money, when he received it, should be used in paying off his existing mortgage debts. He expressly instructed Dreher accordingly at the time the bond and mortgage in question were executed, and when he knew that Henken had already supplied his agent with the necessary money Henken trusted Dreher to apply the money honestly should a search disclose the existence of any liens, just as he might have trusted Schwicker had the money been paid directly to him instead of to his duly-authorized agent. But the fact that Dreher misapplied the money and betrayed the trust no more supports a finding that Henken kept back the money, and did not pay it over, than would the fact

of direct payment to Schwicker personally, had that been the course of the transaction. And no witness even hints in the most remote degree that the bond and mortgage were executed and delivered upon the condition found by the court, or upon any other condition whatever. The only possible condition in the case was that Henken should have a first mortgage. This Schwicker's agent promised him, and received the money on the strength of the promise. The moment the money was paid to Dreher, it became the property of Schwicker, which he only could apply to the payment of the prior liens. He so understood, and personally ordered the application. When the money was misappropriated, it was his loss, with the incidental injury to the plaintiffs that they received for the money loaned only a questionable security, instead of the first mortgage, for which Henken bargained.

It may be conceded that in such dealings as these one man is often, for certain separable purposes, the agent of either party. In such cases the measure of the trust generally marks the limit of the risk. In the most favorable view possible to the defendants, Dreher might be regarded as Henken's agent to search the title, and to see to it that the plaintiffs got a first mortgage. In that view the limit of any possible legitimate adjudication would be that Dreher had failed him in the confidence reposed, and that, as a consequence, as is the admitted fact, Henken would have only a third and doubtful mortgage in the stead of the adequate first lien for which he had contracted and paid. But in no view can Henken be prohibited from collecting the bond which Schwicker gave him for the money paid to the individual who was admittedly Schwicker's agent for the purpose of receiving it, or from resorting as a third lien to the mortgage security which was executed with full knowledge of all the facts, until truth and honesty shall cease to be factors in business dealings and judicial determinations.

It is needless, perhaps, to add that no decision of the courts of this state has been presented or found which tends to justify the finding upon which the judgment herein is based. The case of Rapps v. Gottlieb, 142 N. Y. 164, 36 N. E. 1052, is not authority in support of this finding. There the bond and mortgage were executed and delivered upon the express understanding that they should be "invalid, void, and of no effect" until the mortgagee advanced the consideration. The mortgagee did not advance the money, but assigned the invalid securities, and it was held that no debt whatever was created, and that the assignee stood in no better position than the assignor. The learned counsel for the defendants cites three cases, none of which tends in any degree to support the judgment. It is sufficient to say of Josephthal v. Heyman, 2 Abb. N. C. 22, that it is directly opposed to the defendants' contention. The facts were similar in many respects to the case at bar, excepting that in that case the lender did hire the agent as his attorney to search the title. The court held, however, that this did not make him the lender's agent to discharge existing liens; that the duty or obligation to pay off such debts was that of the borrower, who owed them; that such duty was included in the lat-

ter's engagement to give the lender a first mortgage; and that, where the agent under such circumstances misapplied the mortgage moneys received from the lender, the loss should fall upon the borrower. In Plass v. Brusie, 21 Wkly. Dig. 562, the agent was first employed by the lender to invest the money which was the subject of controversy. The latter was informed by the agent of the existence of the prior mortgages, and in undertaking to retain out of the mortgage money a sum sufficient to pay them off acted under the instructions of the lender alone; the borrower not assuming in any way to give directions as to their payment and cancellation, but intending, on the contrary, that they should be assigned to the lender as additional security. In Graves v. Mumford, 26 Barb. 94, the agent was in possession of his principal's money to loan. The borrower applied to the agent for $3,000, stating at the time that the property was incumbered for $2,200. The agent took a bond and mortgage for $3,000, on which he paid $800 only, retaining the balance of the loan to discharge the prior incumbrances. The court sustained a finding that the agreement made by the agent of the lender to pay off the prior incumbrances was "part and parcel of the contract of loan," and that the lender was bound by it, and must be held responsible for the fidelity of his agent in its fulfillment. In that case the lender did not intrust either the borrower or his agent with the entire fund as here, and until the prior mortgages were actually paid the lender retained the money to that extent in his own possession unloaned. It was precisely as though Henken had given Dreher a check for $600 only, keeping back $2,600 for the purpose of clearing the record, and without doing so had still attempted to foreclose for the full $3,200. The case of Lipman v. Noblit, 194 Pa. 416, 45 Atl. 377, is somewhat analogous to the case now under consideration. There a vendor of land was bound to pay off a mortgage upon it before he would be entitled to the purchase money. The vendee, however, was ready to pay before the vendor was ready to perform, and it was arranged between the parties that the vendee should take the deed, and that his attorney should retain from the purchase money the amount of the mortgage until it should be satisfied, and that then he should pay it to the vendor. It was held that, as the vendee had done all that was required of him to complete his title, the duty unfulfilled being that of the vendor, the custodian of the money pending the delay must be regarded as acting in the latter's behalf, and that the vendee therefore could not be held liable for the attorney's embezzlement of the money.

It follows that the judgment should be reversed, and a new trial granted.

JENKS and SEWELL, JJ., concur.

Judgment reversed, and new trial granted, without costs of this appeal.

WOODWARD, J. (dissenting). The facts in this case are practically undisputed. The defendant Frederick Schwicker, desiring to borrow the sum of $4,000, applied to a real estate agent and

broker named Dreher to procure the loan. It was agreed between them that the loan should be for the sum of $4,200, the additional $200 to go to Dreher as a commission for securing the loan. Of the money to be borrowed $3,200 was to be secured by bond and mortgage upon the real estate in question, and we are here concerned only with this part of the transaction. The real estate described in the complaint was incumbered at the time of this negotiation with three mortgages, amounting, respectively, to $1,600, $1,000, and $400, making an aggregate of $3,000; the intention being that the money realized from the loan should be used to pay these prior incumbrances, so that whoever should loan the money would be given a first lien upon the premises. Dreher visited the plaintiff Ernst Henken, and told him that he had an opportunity to make a good loan for $3,200, and asked if Henken had this amount of money for this purpose. Henken replied that he had, and subsequently looked over the property with Dreher, and then gave the latter his check for $3,200, payable to the order of Dreher, who deposited the same to his own account in the Kings County Trust Company. Dreher, on receiving the check from Henken, gave a receipt for the same in his own name. While the money was in the hands of Dreher, the defendant Schwicker called upon Dreher, and asked the latter if he had got the money, and, on being assured that he had, and upon Dreher agreeing to pay off the prior incumbrances, Schwicker executed the bond, and he and his wife executed the mortgage to secure the money to the plaintiffs, Henken and wife. Dreher had the mortgage recorded for Henken, and subsequently delivered the papers to him, and for a period of about six years continued to collect the interest of the defendant Schwicker, and to pay the same over to the plaintiff Henken. Henken understood that he was to have a first mortgage upon the premises, and, upon Dreher promising to procure a search, the check which constitutes the basis of this controversy was turned over to Dreher, and the mortgage was executed and delivered upon the promise of Dreher to pay off the prior incumbrances. At this time it is claimed that Schwicker took a receipt from Dreher for the $200 commission, and that the former instructed Dreher to pay off the three mortgages; but this does not rest upon very substantial evidence, for Dreher, after admitting that he had the money, told Schwicker that he would have to hold the money to protect the man who loaned it; and it was upon the assurance of Dreher that he would dispose of the money for the purpose of paying off the prior incumbrances and protecting the man who loaned the money that the mortgage was delivered, to be subsequently recorded for Henken. Dreher paid off the $400 mortgage only, appropriating the rest of the money to his own use, and leaving the other two mortgages, amounting to $2,600, still unpaid and outstanding. This transaction occurred in 1892, and from that time to November, 1898, Dreher covered up the defalcation by paying the interest upon the prior mortgages, the meanwhile collecting interest upon the Schwicker loan and turning it over to the plaintiff Henken. The present

action is brought to foreclose the mortgage given to secure the loan of $3,200 to Schwicker. The answers allege that the plaintiffs withheld from the mortgage money the sum of $2,600 for the purpose of satisfying and discharging of record the two prior mortgages, and that they (the plaintiffs) failed to pay off, satisfy, and discharge the same, but retained, and still retain, this money in their possession. Upon the issue thus presented the learned trial justice at special term has found that:

"The mortgage sought to be foreclosed in this action and the bond accompanying the same were executed and delivered to the plaintiff herein by the defendant Schwicker upon the express understanding and agreement that the same were to be held by these plaintiffs upon the condition that they apply $3,000 towards the payment of the existing liens upon said premises described in said mortgage, and $200 towards the payment of the fees of one Christian W. C. Dreher; and that these plaintiffs applied $600 only of said $3,200 for the purpose of said contract and in pursuance of their agreement, whereby, to the extent of $2,600, there was a failure of consideration as to these defendants Schwicker, and the said bond and mortgage were valid and effectual as against defendants Schwicker to the extent of said $600 actually advanced, with interest from the 1st day of May, 1899, and no more."

We apprehend that the only question involved in this controversy, as suggested by the learned court upon the trial of the action, is whether Dreher was the agent of Henken or of Schwicker, for it can hardly be questioned that where parties act through an agent they are bound by the acts of such agent within the apparent scope of his authority; and in the present instance there is no question raised as to the power of Dreher to act, except, of course, as to the embezzlement of the funds in his possession. If the evidence in the case supports the conclusion reached by the learned court at special term that Dreher was the agent of Henken, then under the well-established rule that "when one of two innocent persons must suffer from the act of a third person, he shall sustain the loss who has enabled the third to do the injury" (Walsh v. Insurance Co., 73 N. Y. 5, 10; Timpson v. Allen, 149 N. Y. 513, 520, 44 N. E. 171), there would seem to be no doubt of the correctness of the judgment as an expression of the rules long sanctioned by equity, and calculated to conserve the general welfare of society. Dreher was engaged in business as a real estate agent or broker in addition to insurance. Real estate brokers are not only engaged to negotiate between the buyer and seller of real property, but they are understood to manage estates, lease or let property, collect rents, and negotiate loans on bonds and mortgages. 4 Am. & Eng. Enc. Law (2d Ed.) 962. This appears, by the evidence, to have been the business of Dreher, who apparently held himself out either as having money to loan, or as having clients who were willing to loan; for he testifies in behalf of the plaintiff, on cross-examination, as follows: "You are in the habit of loaning money on bond and mortgage?" "Yes, sir." "In this case Mr. Henken was a client of yours?" "He was a client of mine, but not in this particular case." He testifies further that he had loaned money for Mr. Henken, though he did not remember whether it was prior or subsequent to this transaction, and that he had previously drawn

the papers in the sale of a house by Henken, so that he knew the latter had money. Schwicker went to this man Dreher, who was known in the community as a loan agent or real estate broker, and asked him if he could procure him a loan. Dreher undertook to do this, and went to his "client." "I told Mr. Henken that Frederick Schwicker wanted a loan on property in Clarenceville. I took Mr. Henken out there, and showed him the property, and he said he was willing to make the loan. Henken said he was willing. Then I searched the title." Subsequently Henken called at Dreher's office, and handed the latter a check for $3,200, payable to the order of Dreher, saying, "There's $3,200 for that loan;" and it is in evidence that Dreher gave Henken a receipt for this money in his own name, and deposited the same to his own account in the Kings County Trust Company. It was held in Phister v. Cove, 48 Mo. App. 455, that a broker employed to procure a loan is entitled to his commissions when he has secured a lender able, ready, and willing to make the loan, without tendering or causing to be tendered the amount of the loan; and the same doctrine is held in this state. Duclos v. Cunningham, 102 N. Y. 678, 6 N. E. 790; Gilder v. Davis, 137 N. Y. 504, 506, 33 N. E. 599, 20 L. R. A. 398; Condict v. Cowdrey, 139 N. Y. 273, 280, 34 N. E. 781. It seems clear that the agency of Dreher for Schwicker was at an end when he had found a person ready, willing, and able to make the loan, and the fact that Schwicker never met Henken until after the loan was made, and that the latter intrusted the whole transaction to Dreher, is conclusive upon the question of the agency of Dreher for Henken. No authority to receive payment under a contract is to be implied from the fact that the agent was employed to make or negotiate it (1 Am. & Eng. Enc. Law, 1026), and we are unable to see any justification for the theory that Henken gave his check to Dreher as the agent of Schwicker. At the time that the check was delivered, Dreher did not have the securities, which would have raised an implication that he was authorized to receive the money (Brewster v. Carnes, 103 N. Y. 556, 564, 9 N. E. 323, and authority there cited; Crane v. Gruenewald, 120 N. Y. 274, 24 N. E. 456, 17 Am. St. Rep. 643); and the entire conduct of both Dreher and Henken in the premises is such as to lead irresistibly to the conclusion that Dreher acted in the matter as the agent of Henken.

Let us follow in the evidence the proceedings after Henken had delivered his check to Dreher and the latter had deposited the money in the Kings County Trust to his own credit. Mr. Schwicker testifies:

"At the time the loan was closed, all the conversation between me and Mr. Dreher was: I asked Mr. Dreher if he had received the money, and he told me, 'Yes,' but he said: 'I will hold the money until I have the money [papers], because they are not all quite ready, and then I will pay it over to Mr. Baker. I have to hold it to protect this new party.' He told me that I did not receive the money myself, but he would attend to the money himself for this new party. That is a part of the conversation. No money was paid over to me at the time. I did not know prior to this time who it was that was going to loan the money to me. Nothing was said in that interview about searching the title. Nothing was said at the later interview between myself and Mr. Dreher about searching the title."

It may be remarked, in passing, that this is a strange attitude for the agent of Schwicker, and it becomes reasonable only in the view that Dreher was acting as the agent of Henken. Dreher testifies that Henken came into his office, and delivered the check with the remark, "There's $3,200 for that loan," and he says that Henken referred to it as the Schwicker loan. The following questions and answers then appear in evidence:

"Did he ask you whether the title was good?" "Yes, sir." "Did you tell him there were mortgages on it?" "No, sir." "Did you tell him the property was free and clear?" "No, sir; he left it to me." "Did Mr. Henken leave it to you to see this property clear?" "Yes, sir." "Mr. and Mrs. Schwicker signed the bond and mortgage in your presence?" "Yes." "And did they ask you for the $3,200?" "Yes. I told them I had the check, and would settle the matter up." "You told them you would pay off these mortgages?" "Yes." "You told them, with the balance you would pay the farm they bought?" "No, because they had money of their own." "Did they give you money besides?" "No." "None of this $3,200 was used to pay for that farm?" "No; I don't know." "You recorded this mortgage before you saw Mr. Henken?" "Yes, sir; I recorded it for Mr. Henken, and, after recording, it was returned to me, and I gave it to Mr. Henken." "Who told you to record it?" "That was my business." "Why did you record it?" "Because it was required." "What do you mean by saying 'it was required'?" "To make it secure against other liens." "That was, then, to secure Mr. Henken that you recorded this mortgage?" "Yes." "What was your object in searching the title?" "It was my business." "Who told you to search the title?" "Mr. Henken." * * * "Is it not a fact that you deducted $2,600 to pay off existing mortgages?" "Yes." * * * "What was your object in holding this money back?" "To see that they were paid off,—the incumbrances paid off,—for the purpose of making the $3,200 mortgage a first mortgage." * * * "Were you a friend of Henken?" "Yes, an occasional friend." "Was he in the habit of giving you more than $1,000 to loan at a time?" "One time he gave me $1,200, and I think another time $800." "Then this $3,200 is the largest amount he ever gave you to loan?" "Yes." "And at the time he handed you the $3,200 did he or did he not say to you that you should place in that property the said $3,200 and see that everything was all right?" "Yes, sir. I don't remember his words." * * * "Will you swear positively that you mean that you made no representations to Henken as to what you would do with the $3,200?" "I told him I could place it on that property, secured by bond and mortgage." "You explain how you placed the name Christina Henken in the bond and mortgage." "Henken told me he wanted the names conjointly." "Did you see Mrs. Henken in this transaction?" "Yes." "Did Mrs. Henken say she wanted her name in the bond and mortgage?" "Yes." * * * "At the time you called to see Mr. and Mrs. Henken in reference to this transaction, did you not say to them that you had an opportunity—or words to that effect—to loan $3,200 on good bond and mortgage?" "Yes." "And if they would let you have the money you would see everything was all right, and that you would prepare the bond and mortgage, and search the title, and would attend to the matter for them,—or words to that effect?" "Yes."

This is the plaintiff's own witness. It is in entire harmony with the evidence of the defendant, and it is supported by the fact that in the final transaction, where the bond and mortgage were executed and delivered, neither Henken nor his wife was present. Dreher drew the papers in accordance with the instructions received from the Henkens, and he placed them on record for Henken. Henken himself testifies: "I had the bond and mortgage recorded after by Mr. Dreher. It was kept by him and recorded." Mr. Henken further testifies:

"I saw Mr. Dreher, and had a conversation about lending this money. Then I went with him to look at the property. Mr. Dreher told me that he represented Mr. Schwicker in the transaction, as real estate broker, or whatever you call it. * * * I had put money in the hands of Mr. Dreher for the purpose of loaning, I to receive back the bond and mortgage. Nothing was said between me and Mr. Dreher about his searching this title. That was no affair of mine. All that was said was that I insisted upon having a first bond and mortgage. He said that was the understanding between Mr. Dreher and Mr. Schwicker also,—that the first mortgage was to be paid off, and I was to receive first mortgage. Mr. Dreher had done business before for me in loaning money on bond and mortgage for some years. * * * In this particular case I gave the check for $3,200, and did not at that time receive back the bond and mortgage. I received his receipt in place of it. The receipt was signed by Mr. Dreher. * * * It stated that he received $3,200 from me, and he owed me $3,200, and the signature, of course. * * * I received interest on this mortgage for several years. I did not in every instance receive the interest from Mr. Dreher." Cross-examination: "The letter was about the interest after I learned that Dreher had been arrested,—that thereafter Schwicker should pay the interest to me."

Mrs. Henken testifies in reference to this same letter that "we wrote a few lines to call and pay the interest after this, and not to pay Mr. Dreher any money." In reference to the interest Dreher testifies that he continued to collect the interest and to pay it over to Henken from the date of the original transaction in 1892 up to April, 1898. It thus appears, upon the plaintiff's own evidence, supported by that of his witness Dreher in some measure, that at the time of the delivery of Henken's check to Dreher the former had no other evidence of the latter's relation to Schwicker than the statement of Dreher that he was representing Schwicker as a real estate broker; and, as we have already pointed out, the contract of a broker is performed when he has found a person ready, willing, and able to meet the conditions of the contract proposed by the employer. The rule is well settled that a broker has ordinarily no authority to receive payment for property sold by him for his principal (4 Am. & Eng. Enc. Law, 965, and authorities in note 1), and, if we view the bond and mortgage upon the premises involved as property, we shall see that the plaintiff in this action had no right to assume that a real estate broker had any authority beyond the making of the contract of sale, and a purchaser who pays the broker does so at his own risk. Such payment does not discharge him from liability to the principal, unless the authority of the broker to receive payment be express, or may reasonably be implied from the circumstances. See authority last above cited. In legal effect, Dreher was employed to make a contract for the sale of a bond and mortgage for $3,200. He was not authorized to receive the money, but to act under the ordinary limitations of a broker in the transaction. The bond and mortgage were not in existence at the time, and it is not even suggested that Dreher had any other authority than that which was to be implied from his representations to Henken, who says that he stated that he represented Schwicker in the capacity of a real estate broker, so that, if the payment was made to Dreher as the agent of Schwicker, Henken took the risk of a proper disposition being made of the money, because under none of the authorities was Dreher authorized to accept

payment for the bond and mortgage. If we look at the matter from the standpoint that Dreher was the agent of Henken for the general purpose of loaning his money,—and both Dreher and Henken testify to the effect that this was the relation subsisting between them, although Dreher says that Henken was not his "client" in this particular case,—the conduct of all the parties appears reasonable and consistent; while, if we view the matter in the light of the agency of Dreher for Schwicker, we are confronted with absurdities at every point. We find the so-called agent of Schwicker refusing to deliver the money of his principal, but holding it for the purpose of taking care of the lender. We find this so-called agent drawing the bond and mortgage under the direction of the lender, and procuring the recording of the same, and a subsequent delivery to Henken. Not only this, but for a period of years the so-called agent collects interest of his supposed principal, and turns it over to the lender; and when a loss must fall upon some one we are told that Dreher was the agent of the man who employed him for the limited purpose of securing a loan from one of his "clients." The proposition is absurd. The agency of Dreher for Henken is established beyond any reasonable doubt, and it is not disputed that Dreher retained $2,600 of the sum given him for the purpose of paying off the mortgages, which sum he appropriated to his own uses. If Henken had personally retained the money, it is not to be doubted that the judgment in this case would be sustained, and the rule is not different because Henken's agent, for the alleged purpose of affording his principal a first lien upon the premises, deducted this sum from the amount to be used for the benefit of the defendant. The evidence fully sustains the conclusion reached by the learned court at special term that Dreher was the agent of the plaintiff, and that the consideration for the bond and mortgage failed to the extent of $2,600, leaving only $600 due and payable; and this much the defendants had already conceded.

It is a significant fact that in all of the proceedings the plaintiff was never brought into contact with the defendant. Dreher was relied upon by the plaintiff to draw the papers, look after the title, to record the bond and mortgage, and to do all of the things which the principal or an agent would have done under similar circumstances. For a period of about six years Dreher continued to act in the manner in which an agent would have been expected to act in collecting the interest upon the bond and mortgage and turning the same over to Henken, and it was not until Dreher had been arrested for some irregularity that the plaintiff wrote to the defendant, and notified him not to pay any more money or interest to Dreher. Yet we are asked to overrule the determination of the court at special term, who had all of the witnesses in view, and to hold that Dreher was the agent of the defendant, and that the latter is responsible for the loss growing out of the plaintiff's action in delivering his check to Dreher and accepting the latter's personal receipt for the same, at a time when the only pretended authority of Dreher was to negotiate a loan, and he had no authority, express or fairly implied, to receive the money in behalf of Schwicker. The whole conduct of Dreher evidences to

our mind the fact that he understood that he was acting for his "client," Mr. Henken, and the latter admits that Dreher had acted for him in this capacity for a number of years prior to this transaction. It is true, of course, that Schwicker, in his cross-examination, admits that he told Dreher to pay off the Baker mortgages, but this is to be understood only in the sense that he delivered the bond and mortgage upon the express promise of Henken's agent to pay off the prior incumbrances, so that his principal should have a first lien upon the premises. Dreher, it is to be remembered, had refused to deliver the money, had refused to rely upon the integrity of his so-called principal, and, as the purpose of the defendant was to get these mortgages out of the way, and as this was necessary to the security of the plaintiff, the acquiescence of the defendant in the proposition was not enough to constitute Dreher his agent for the purpose of paying off the incumbrances. Dreher, holding plaintiff's money, had refused dominion over it to Schwicker, and the half-understood admission of the defendant cannot operate to change the entire character of the transaction.

The judgment appealed from should be affirmed, with costs.

GOODRICH, P. J., concurs.