## UNION CENT. LIFE INS. CO. v. PAPPAN *et al.*

No. 1991.   Opinion Filed October 23, 1912.

Rehearing Denied December 17, 1912.

(128 Pac. 716.)

PRINCIPAL AND AGENT — Employment of Agent — Evidence — Findings. The defendant company, by written instrument, appointed Winne & Winne its financial correspondents for the purpose of submitting applications for loans. In the written instrument it was stipulated that the company would furnish cash for the loans; that it would furnish all blanks necessary for the conduct of the business; that Winne & Winne should be under the general supervision of the company's treasurer; that their office should be open to the company's inspection; that they should draw all mortgages and notes on forms provided, have them executed and recorded, and furnish with the abstract a specific authority to disburse the proceeds of the loan; that they should collect delinquent interest without expense to the company; that they should render such incidental service upon the general business of the company as might be requested and reasonable, without compensation; that they would render such attention to the closing of loans as might be necessary or desired by the company. Winne & Winne had a subagent at Newkirk through whom Pappan made application to the defendant for a loan. The subagent was one of the company's land examiners and the company carried his name on its books as subagent of Winne & Winne. The application con-

tained a paragraph appointing Winne & Winne Pappan's agent. On the back of the application Wharton, as agent, and Winne & Winne, as financial correspondents, recommended the loan. Pappan executed a note and mortgage and on the same day, on a form furnished by the company, drew a draft on the company, payable to Winne & Winne. Later Pappan gave Winne & Winne an order to pay the money to a bank. He also signed a ratification and receipt, which amounted to an order to Winne & Winne to pay the money to a bank. Some time after the execution of the note and mortgage, the company wrote Winne & Winne for evidence that they had advanced the money on the loans. Winne & Winne received the proceeds of the draft, but did not pay it to Pappan or to the bank. **Held** (1) that the court had the right, notwithstanding the statement in the application that Pappan appointed Winne & Winne his agents, and notwithstanding the draft and other writings, to examine all the evidence for the purpose of ascertaining whose agents Winne & Winne were for the purpose of receiving the money; (2) that a finding that they received it as the agents of the company, not as the agents of Pappan, was reasonably supported by the evidence.

(Syllabus by Rosser, C.)

*Error from District Court, Kay County;*
*W. M. Bowles, Judge.*

Suit by Achan Pappan and another against the Union Central Life Insurance Company for cancellation of a mortgage. Decree for plaintiffs, and defendant brings error. Affirmed.

*J. F. King,* for plaintiff in error.

*Sam K. Sullivan* and *Buckman & Bloss,* for defendants in error.

Opinion by ROSSER, C. This is a suit by Achan Pappan and E. S. Shidler, hereinafter called plaintiffs, against the Union Central Life Insurance Company, hereinafter called company, to cancel a note and mortgage executed by Pappan to the Union Central Life Insurance Company, hereinafter called defendant. There was a decree in the trial court canceling the mortgage, and the defendant, the Union Central Life Insurance Company, has appealed. The facts are as follows: On the 25th of June, 1907, the defendant appointed Winne & Winne, of Wichita, Kan., its agents. The appointment was a written instrument, which is as follows:

"This memoranda, made this twenty-fifth day of June in the year one thousand nine hundred and seven between the Union Central Life Insurance Company of Cincinnati, Ohio, party of the first part, and Winne & Winne of Wichita, in the county of Sedgwick, state of Kansas, party of the second part. Witnesseth: That the said parties for the consideration hereinafter mentioned hereby mutually agree as follows, to wit: (1) The party of the first part does hereby appoint the party of the second part as its financial correspondent for the purpose of submitting applications for loans upon the following terms: (a) Limit of amounts loaned $300.00 to $10,000.00. (b) Security: Farm lands worth at a minimum double the amount loaned, exclusive of buildings. (c) Fire insurance: Accepted. (d) Title: Complete abstract from the United States patent down to the borrower's mortgage of record, at the expense of the applicant. (e) Term of loan: Ten years. Extension at maturity to satisfactory borrowers. (f) Special privilege: Partial payments in any amount at any time, with rebate of interest, providing that such payment shall not exceed in any one year one-fifth of the principal. (g) Rate of interest: 6, 6½ & 7% annually, payable on the first day of any month designated by the borrower. (2) That party of the first part agrees to furnish cash from its surplus funds for loans submitted under the above terms, when security and title have been approved and the mortgage papers filed in accordance with the priority of presentation of satisfactory title evidence. (3) That the party of the first part agrees to furnish all blanks necessary for the conduct of the business. (4) That the party of the first part will assign the following territory, to wit: (See *Addenda.*) (5) That the party of the first part will pay a commission of ——— % upon all loans satisfactorily closed upon applications presented by party of the second part; the bill for said compensation to be rendered upon the fifteenth day of each month. That party of the first part will not pay other item of expense in the prosecution of the business. (6) That the party of the first part may consign papers necessary for the consummation of the proposed loan to the party of the second part, but in so doing said party of the first part does not confer upon said party of the second part any authority whatever to waive obligations, alter or change the papers in any respect, or to create any liability. (7) That in making this contract, the said party of the first part specifically stipulates that said second party shall be under the general supervision of Louis Breiling, Treas. of Cincinnati, Ohio; that all applications contemplated are to be submitted through him; that the security will be examined by him

or such appointee as he may deem advisable at his expense; and that the local office of said party of the second part shall be open to inspection to the party of the first part so far as it relates to the business of said party of the first part. (8) The party of the second part agrees to solicit applications for loans for the party of the first part upon the terms heretofore recited. (9) That the party of the second part will perform the duty of drawing all mortgages and notes upon forms provided, when required, have them properly executed and recorded, and furnish, with abstract complete, a specific authority to disburse the proceeds of the loan, executed by the proposed borrower. (10) That the party of the second part will make the collection of any delinquent interest upon loans placed by said party of the second part without expense to the party of the first part. (11) That the party of the second part will render such incidental service upon the general business of the party of the first part as may be requested and may be reasonable without compensation. (12) That the party of the second part will render such attention as may be necessary or may be desired by the party of the first part to the closing of loans. (13) And that should the party of the second part fail to comply with any of the conditions, duties or obligations under this agreement, or fail to conduct the business in a manner satisfactory to the officers of the party of the first part, the said party of the first part may at its option wholly or partially terminate this agreement; otherwise it shall continue in force for the terms of one year from this date. (14) The party of the first part hereby reserves to itself the right to suspend temporarily or permanently the provisions of this contract if for any reason there should be an actual or anticipated lack of funds for loaning purposes. The party of the first part also reserves to itself the right to terminate this contract at any time if deemed advisable by the officers of the said party of the first part by reason of legislation as to usury, taxation, or otherwise. In witness whereof, the parties of this contract have set their hands and seals the day and year first written. The Union Central Life Insurance Company, by Louis Breiling, Treasurer. Winne & Winne, by Scott E. Winne, Partner, No. 262. Fin. Cor. Contract. 10-24-99. IM."

Indorsed on the back as follows:

"Addenda: (4) The party of the first part will (5) pay the following commissions upon loans satisfactorily closed upon applications presented by the party of the second part, bill for same to be rendered on the fifteenth day of each month. The

party of the first part will pay no other item of expense in the prosecution of the business. In Butler, Cowley, Ellsworth, Harper, Harvey, Kingman, Reno, McPherson, Rice, Sedgwick, Sumner, Russell, Barton, Stafford, Pratt and Barber counties, Kansas, and in Kay county, Oklahoma, 4% commission on 6% interest rate loans. Woods, Blaine, Caddo, Grant, Garfield, Kingfisher, Canadian counties, Oklahoma, 4% commission on 6½% interest rate loans. Comanche and Kiowa counties, Oklahoma, 2% commission on 6½% interest rate loans, 4% commission on 7% loans. Woodward, Day, Roger Mills and Greer counties, Oklahoma, 3% commission on 7% interest rate loans. Pawnee, Edwards, Iowa counties, Kansas, and Washita, Custer, Dewey counties, Oklahoma, 4% commission on 7% interest rate loans. The party of the first part also agrees, in event of *bona fide* sale of mortgaged premises, and the refusal of the purchaser to agree to a reconstruction of the contract, to accept payment in full of principal, interest, and an additional twelve months' interest.

"THE UNION CENTRAL LIFE INSURANCE COMPANY,
"By Louis Breiling, Treasurer.
"WINNE & WINNE,
"By Scott E. Winne, Partner."

Winne & Winne had a subagent at Newkirk, one E. I. Wharton. Wharton was the approved examiner of the lands on which the Union Central Life Insurance Company loaned money in Kay county, and his name was carried on a memorandum record of the Union Central Life Insurance Company as local agent, or subagent, of Winne & Winne, of Wichita, Kan. On the 7th of September, 1907, Achan Pappan made application to the defendant company for a loan of $2,000. The application was upon a printed form. It began as follows:

"I, Achan Pappan of Washungo, Okla., hereby make application to the Union Central Life Insurance Company of Cincinnati, Ohio, for a loan of two thousand dollars for twenty years."

It contained a description of the land and a number of statements with reference to its condition, value, location, etc. It also contained the following paragraph:

"(31) Agency. I hereby constitute and appoint Winne & Winne, of Wichita, Kansas, my agents to procure the necessary abstracts of title to the land to show a clear and unincumbered title, in fee simple, thereto, at my expense, and to charge me for the same and to send the money or draft to make such payments

at my risk. I hereby authorize them to procure the loan herein applied for from the company to which this application is made or from any other source from which they can get the sum herein applied for on the terms contained on the application.

"Dated at Newkirk, Okla., the 7th day of September, 1907.

his<br>
"Achan    X    Pappan, Applicant.<br>
mark

"Witness to mark:

"I. E. Wharton.

"I. M. Welliver.

"State of Okla., Kay County. The above printed and written statements of Achan Pappan were subscribed and sworn to before me this 7th day of Sep. 1907.

"I. E. Wharton,<br>
"Notary Public, Kay County.

"My commission expires Dec. 22, 1909."

On the back of the application was indorsed the following:

"Recommend a loan of $2,000.00. E. I. Wharton, Agent. Recommend a loan of $2,000.00. Winne & Winne, Financial Correspondent."

On the 16th of September, 1907, Pappan and his wife executed a mortgage to the defendant. On the same day Pappan and his wife drew a draft on the Union Central Life Insurance Company payable to the order of Winne & Winne in the following form:

"$2,000.00. Newkirk, Okla., Sept. 16, 1907. Pay to the order of Winne & Winne two thousand dollars, the receipt of which is hereby acknowledged, on account of my mortgage note to the Union Central Life Insurance Co., of Cincinnati, Ohio, dated Sept. 16th, 1907. Amount $2,000.00. To the Union Central Life Insurance Company, Cincinnati, Ohio."

This draft was on a form furnished by the defendant company.

On the 19th of September, 1907, Pappan borrowed $2,000 from the Farmers' National Bank of Newkirk. He did this upon the understanding that it would take something like 60 days to get the money from the defendant company, and he got the money to use until the loan from the defendant company could be completed, and promised the bank that he would have the money re-

ceived from the loan paid to it direct. On the 16th of September, 1907, Pappan gave the following order to Winne & Winne:

"Newkirk, Oklahoma, Sept. 10, 1907. To Winne & Winne, Wichita, Kansas—Gentlemen: You are hereby directed to pay to the Farmers' National Bank of Newkirk, Oklahoma, the sum of two thousand dollars, and charge the same to my mortgage loan, which has been approved, through your agency, by the Union Central Life Insurance Company of Cincinnati, Ohio, for the sum of two thousand dollars upon the S. ½, section 31, township 28 north, in range 5 E. .I hereby acknowledge the receipt, this date, of $2,000.00, the sum above named, from said bank on my personal note which I have this day executed and for the further security of which this order is given. Signed and dated this 16th day of Sept., 1907.

his
"ACHAN  X  PAPPAN, Mortgagor.
mark

"Witness:
        "A. M. KNIGHT.
        "R. WOODMANCY."

On the 21st of October, 1907, the defendant company wrote a letter to Winne & Winne in which, to use the language of Mr. Breiling, treasurer of the company, they agreed to purchase the loan on or before April 4, 1908. The paragraph of the letter with reference to that is as follows:

"(4)   This company will purchase this loan on or before the 4 day of April, 1908, on which date the holder of the above described draft is hereby authorized to make formal acceptance on behalf of the company and in its name."

On the 15th of October, 1907, Pappan and his wife executed a ratification and receipt, the material parts of which are as follows:

"We Achan Pappan & Lizzie Pappan his wife hereby ratify the disbursement of the proceeds of my loan from the Union Central Life Ins. Co., of $2,000.00 secured by mortgage upon 316.97 acres, in Kay county, state of Oklahoma, in accordance with the following statement, which disbursement makes said mortgage a first lien against said land. (8) Winne & Winne agent to pay the following items accrued on Nos. 1, 2 and 3 from date to which paid, to date of payment in full of principal and interest. (9) Farmers' Natl. Bank, Newkirk, Oklahoma, $2,000.-

00. (10) Balance to be delivered to the undersigned. (11) Total amount of loan from the Union Central Life Ins. Co., $2,000.00. This constitutes my receipt for the proceeds of the above described loan. Dated at Newkirk, Oklahoma, this 15th day of October, 1907."

This was also written on a form furnished by the company.

Winne & Winne sold the draft Pappan drew to the National Bank of Commerce of Lincoln, Neb., and that bank afterwards collected it from the company. Before the draft was paid by the company, Pappan notified it he had not received the money and not to pay the draft. This fact, however, is not deemed of importance because the bank had purchased the draft in regular course of business, relying on the company's letter of acceptance, and the company, of course, was bound to pay it. In answer to the question, "Whom did you depend upon to see that your borrower received the money upon the mortgage and notes that you received?" Mr. Breiling, the treasurer of the company, answered "Winne & Winne." Winne & Winne paid the interest on the note that Pappan gave to the bank for some time, but never paid the money which they received for the draft to Pappan or to the bank. Pappan afterwards paid off the mortgage to the bank.

On the 23d of October the company wrote the following letter to the National Bank of Commerce of Lincoln, Neb.:

"Oct. 26th, 1907. National Bank of Commerce, Lincoln, Neb.—Gentlemen: As per instructions from our financial correspondents, Messrs. Winne & Winne, Wichita, Kan., I inclose herewith mortgage and notes in the Ensley M. Lewis, $2,200.00, Achan Pappan, $2,000.00, loans, more specifically described in the receipts herewith inclosed. Please sign these receipts, and return to this office, of receipt of papers. Yours respectfully, Treasurer."

On the 6th of March, 1908, Breiling wrote to Winne & Winne as follows:

"Gentlemen: I hand you herewith copy of letter this day received from A. A. Slosson, president of the Farmers' National Bank, Newkirk, Okla. Also a copy of my reply. Reference to the correspondence at this office shows that a letter was received from Mr. Slosson covering these loans, and the John W. Johnson loan, now under No. 60,487, under date of Jan. 8th, 1908. I wrote you sending a copy of said letter, and my reply thereto, on

Jan. 11th, 1908. I do not find, however, that you replied to said letter, in the next to the last paragraph of which I requested a full and complete explanation by next mail; also statement showing disbursement by you of the proceeds of the loans named, specifying dates, amounts, names of payees, and also indicating medium of payment. I also find that these three loans, Gardner, Andrews and Pappan, are included on the list left by you at this office of loans under dating, for which you requested the company to pay you interest accrued to maturity of dating. I also find that there are no canceled checks on file at this office, showing disbursements of the proceeds of those loans by you. I find that in the R. & R. the amount specified in Mr. Slosson's letter of March 4th are set up, and shown as having been paid to the Farmers' National Bank, on order. Please write me a full and complete explanation of this matter by return mail, and forward your canceled checks, as heretofore requested, evidencing payment of these loans. Do not fail to furnish any showing necessary to connect the checks used by you with the payees shown in the R. & R. and authority you had from the borrower to make such payments."

In connection with this letter this question was asked:

"Q.  I note in your letter of March 6th you state to Winne & Winne, 'I also find that there are no canceled checks on file at this office showing disbursement of the proceeds of these loans by you.' Explain what you mean by that statement. A. Winne & Winne were required to evidence their statement of disbursement of loan by their canceled checks."

It will be observed that the facts in this case are similar to the facts in the cases of *Bell v. Riggs,* 34 Okla. 834, 127 Pac. 427, *Porter v. Wold,* 34 Okla. 253, 127 Pac. 432, and *Goss v. Sorrell,* 33 Okla. 586, 127 Pac. 435. The principal differences in the facts of this case and those of *Bell v. Riggs* are that in *Bell v. Riggs* the application was made to the Winne Mortgage Company, and the note and mortgage sold by that company to Mrs. Bell, and the controversy was between the maker of the note and mortgage and the person who had purchased it from the original mortgagee; while in this case the application was made directly to the defendant company, and the controversy is here between the maker of the note and mortgage and the original mortgagee. In *Bell v. Riggs* it was held that as the application was made to Winne Mortgage Company, and

the note and mortgage executed to that company, and as Scott E. Winne was the manager of both Winne & Winne and the Winne Mortgage Company, that Winne & Winne could not be the agent of the borrower to obtain a loan from the mortgage company.

In the case at bar the application was made to the company. There is no such identity between the company and Winne & Winne as there was between the Winne Mortgage Company and Winne & Winne in *Bell v. Riggs,* and Winne & Winne could have been the agents of Pappan. The question is whether, under the evidence, they were his agents to receive the money. If they were, this case should be reversed. If they remained the agents of the company throughout the transaction, the decree of the lower court canceling the mortgage should be affirmed. It is contended on behalf of the company that the thirty-first paragraph of the application for the loan made Winne & Winne the agents of Pappan. It is also claimed that the draft Pappan drew on the company, the order he gave Winne & Winne to pay the money to the Farmers' National Bank of Newkirk, and the ratification and receipt of October 15, 1907, made Winne & Winne his agents to receive the money. In order to arrive at a correct decision of the matter it is necessary to examine the entire transaction. In the second paragraph of the instrument, in which Winne & Winne were appointed financial correspondents of the company, the company agrees to furnish cash for loans. To whom did it agree to furnish cash? Undoubtedly to its financial correspondents, Winne & Winne. If, by this agreement, the cash was to be furnished them, then the draft and other papers directing the company to pay the money to them did not alter its position for the worse. It had already agreed to do so, and the meaning of the contract was that the company would furnish it to them as its agents. In the third paragraph it agreed to furnish all blanks necessary for the conduct of the business. It did furnish all the blanks used in connection with this case, except the application. The seventh paragraph places Winne & Winne under the general supervision of Louis Breiling, the treasurer of the company, and provides that the local office of Winne & Winne shall be open to

inspection to the company so far as it relates to its business. The ninth paragraph requires Winne & Winne to draw all mortgages and notes on forms provided, when required, have them properly ·executed and recorded, and furnish, with the abstract complete, a specific authority to disburse the proceeds of the loan, executed by the proposed borrower. The tenth paragraph provides that Winne & Winne will make collection of any delinquent interest upon loans without expense to the company. The eleventh para-·graph requires Winne & Winne to render such incidental service as may be requested and may be reasonable without compensation. The twelfth paragraph provides that Winne & Winne will render ·such attention as may be necessary or may be desired by the com-·pany to the closing of loans. The evidence, as already stated, shows that the company looked to Winne & Winne to see that borrowers received their money.

The evidence shows clearly and conclusively that Winne & Winne were the general agents of the company. The company looked to them for everything connected with the general man-·agement of its business, and looked to them to see that the money reached the borrower, and required them to furnish it with the ·evidence by canceled check that the money had been paid. The relation between the company and Winne & Winne was that of ·principal and agent throughout the transaction. Breiling's let-ter of October 26th, written after the draft, order to pay to the bank, and the ratification and receipt, shows that he considered Winne & Winne as still the agents of the company for the pur-·poses of the loan, and the letter of March 6, 1908, shows that the company looked to them to pay the money to Pappan. In ·the face of these facts, the formal execution of the draft, and ratification and receipt, could not alter the relation between the ·company and Winne & Winne.

By the ninth paragraph of the contract between the com-·pany and Winne & Winne, Winne & Winne were required to draw all mortgages and notes on forms provided when required, have them properly executed and recorded, and furnish, with ·the abstract complete, *a specific authority to disburse the proceeds of the loan, executed by the proposed borrower.* The company

made this requirement and furnished a form on which the authority should be given. In other words, the gist of the matter is that Winne & Winne were the agents *of the company to have themselves appointed the agents of the borrower.* The company said to them, "You go ahead with this until the loan reaches a stage where money must be paid. Then you have yourselves appointed the agent of the borrower, and we will pay you the money." A proceeding of this kind does not change the essential relation of the parties.

"The relation of principal and agent is not instituted by the agent; on the contrary, principals employ their agents." (*Bank v. Flint,* 54 Ark. 40, 51, 14 S. W. 769, 773, 10 L. R. A. 459.)

The form of agency obtained by Winne & Winne *was obtained at the request of the company and for its benefit.* It cannot escape liability by any such proceeding. It is to the credit of the company that, notwithstanding the draft and other papers, it continued to demand evidence that Winne & Winne had paid the money over.

The court had the right to examine all the evidence for the purpose of ascertaining whose agents Winne & Winne were, and if, upon a consideration of all the evidence, it appeared that they were the agents of the company to pay the money to Pappan, then it was proper for the court to cancel the mortgage, notwithstanding the instruments purporting to make Winne & Winne Pappan's agents to receive the money. No case has been cited opposing this doctrine. The cases of *McLean v. Ficke,* 94 Iowa, 283, 62 N. W. 753; *Larson v. Lombard Investment Co.,* 51 Minn. 141, 53 N. W. 179; *Jensen v. Lewis Investment Co.,* 39 Neb. 371, 58 N. W. 100; *Olmstead v. New England Mtg. Sec. Co.,* 11 Neb. 487, 9 N. W. 650; *New England Mtg. Sec. Co. v. Addison,* 15 Neb. 335, 18 N. W. 76; *Banks v. Flint,* 54 Ark. 40, 14 S. W. 769, 10 L. R. A. 459; *Travelers' Insurance Co. v. Jones,* 16 Colo. 515, 27 Pac. 807; *Bates v. American Mtg. Co.,* 37 S. C. 88, 16 S. E. 883, 21 L. R. A. 340; *State v. Bristol Savings Bank,* 108 Ala. 3, 18 South. 533, 54 Am. St. Rep. 141—sustain the rule applied here.

*State v. Bristol Savings Bank,* 108 Ala. 3, 18 South. 533, 54 Am. St. Rep. 141, was an action by the state of Alabama against

the bank to recover a penalty for doing business in the state without having filed a certificate with the Secretary of State, designating an agent and place of business as required by the statute. Loaning money on land was the business the bank was charged with having done. The bank denied that it did business in Alabama. Oliver took the application for the loan. He testified that he was the agent of the borrower. In the course of the opinion the court said:

"The witness Oliver for the defendant testified without objection that he, as the agent of the borrower, negotiated the loan outside of the state, and that in respect of it he was not the agent of the defendant. These are conclusions of the witness. If they are not borne out by the facts of the transaction in the judgment of the jury properly instructed by the court as to what constitutes agency, the conclusions amount to nothing; or, to state the proposition differently, the jury must look to all the evidence bearing upon the question of agency, including the conclusion of Oliver received without objection that he was not defendant's agent in ascertaining whose agent he was, and there may be other facts which will justify them in reaching a different conclusion than that reached by the witness. There is also a contract in evidence by which the borrower formally constitutes one Barker his agent to negotiate the loan; the application being forwarded by Oliver to Barker. But notwithstanding this it was open to the plaintiff to show that Barker really acted as the agent of the lender. *Larson v. Lombard Investment Co.* [51 Minn. 141] 53 N. W. 179. Indeed, in this very paper, contract, or application which is relied on as constituting Barker the agent of the borrower, there are stipulations of manifest benefit to the lender to which it is proper for the jury to look in determining whether Barker was not also, in a sense and to some extent, the agent of the defendant. Such, for instance, as following: 'Said mortgage * * * to contain such conditions as are usually exacted by agents who negotiate five-year loans in this state.' Barker was an agent negotiating a five-year loan, and it is a little incongruous that he, solely as the agent of the would-be borrower, should exact of his principal for the benefit of the lender whose agent he was not at all, according to the theory of the defense, conditions which agents usually exact from their principal while acting for their principal for the benefit of a stranger. And so there are stipulations that the borrower's agent shall pay off all prior liens and shall insure the property for the better security of the stranger with

whom he is theoretically dealing at arm's length solely in the interest of his principal."

In the present case the application which it is claimed constituted Winne & Winne the agents of Pappan stipulated that they should procure abstract showing clear title and pay off all prior liens; stipulations evidently inserted for the benefit of the company.

*Banks v. Flint*, 54 Ark. 40, 14 S. W. 769, 10 L. R. A. 459, was a suit to foreclose a mortgage. The defense was usury. Banks, the mortgagor, at the time he made application for the loan, signed an instrument, purporting to appoint Hall & Carter, the persons through whom he made the application, his agents, and in which he agreed to pay them 20 per cent. of the amount obtained for their services in procuring the loan. It was held on evidence very similar to that in the present case that, notwithstanding the written appointment from Banks, Hall & Carter were the agents of the mortgagee, and that the 20 per cent. paid them and certain persons connected with them rendered the mortgage usurious.

The only case exactly, or nearly exactly, in point opposed to the view taken here, which has been found, is *Henken v. Schwicker*, 67 App. Div. 196, 73 N. Y. Supp. 656. Two out of five judges dissented in that case. The same principle applied in this case has been held to govern applications for insurance in the following cases: *Sullivan v. Phoenix Ins. Co.*, 34 Kan. 170, 8 Pac. 112; *Planters' Ins. Co. v. Myers*, 55 Miss. 479, 30 Am. Rep. 521; *Eilenberger v. Protective Mut. Fire Ins. Co.*, 89 Pa. 464; *Gans v. St. Paul F. & M. Ins. Co.*, 43 Wis. 108, 28 Am. Rep. 535; *Sprague v. Holland Purchase Ins. Co.*, 69 N. Y. 129; *Columbia Ins. Co. v. Cooper*, 50 Pa. 331; *Boetcher v. Hawkeye Ins. Co.*, 47 Iowa, 253.

The right of one person. to act as agent for both parties to a transaction should not be extended nor the exercise of the right encouraged. *Meyer v. Hanchett*, 43 Wis. 246; *Leathers v. Canfield*, 117 Mich. 277, 75 N. W. 612, 45 L. R. A. 33. Especially is an attempted double agency subject to criticism when, as in this case, the agency as to one of the parties is continuous, ex-

tending over a considerable period of time and to numerous transactions, while as to the other it only extends to one transaction. The zeal and ability with which this case was presented, and its importance to the parties, and the necessity for stating the facts so that the difference between this case and *Bell v. Riggs, Porter v. Wold,* and *Goss v. Sorrell, supra,* would appear, and so that exactly what is decided could be seen, is the only excuse offered for the length of this opinion.

The judgment of the lower court should be affirmed.

By the Court: It is so ordered.