**BRINTON v. MAXEY et ux.**

No. 4855—Opinion Filed May 23, 1916.
(157 Pac. 1048.)

1. **Brokers—Rights as to Third Party—Representation by Agent.**

For some time prior to February 13, 1911, M. had been making a large number of loans in Atoka county, applications for which had been sent to him by T. Prior to that date T. had repeatedly approached G. M. M. for the purpose of inducing him to take a loan on his farm with M. Later M. went to Tushka and was introduced to G. M. M. by T., and M. and G. M. M. then talked over together the matter of the proposed loan, and M., being asked by G. M. M. what he would "figure the interest at," replied that T. would figure the interest, adding: "If you take a notion to take the loan, sign up the papers and turn them over to T., and the money will be ready right away." Held, T. was the agent of M. and not of G. M. M.

2. **Bills and Notes—Actions—Burden of Proof—Holder in Due Course.**

G. M. M. and wife executed their note and mortgage to M. and delivered them to T., who transmitted them to M. at Lawrence, Kan. By reason of T.'s default the proceeds of said loan were never paid over to G. M. M. or credited to his account in T.'s bank. M. assigned said note and mortgage to B. "without recourse." Later G. M. M. and wife, not having received anything for their note and mortgage, commenced action against M. to cancel same. Whereupon B. intervened, claiming title to the note and mortgage as an innocent purchaser thereof, before maturity. Held, that section 4109, Rev. Laws 1910, cast on B. the burden of proving that she had acquired the title to said note and mortgage as a holder in due course.

3. **Bills and Notes—Actions—Evidence—Sufficiency.**

For statement of evidence reasonably well supporting a finding of the trial court that B. had not sustained the burden cast upon her by said statute to prove that in the instant case she was a holder of the note and mortgage sought to be canceled, in due course, see the body of this opinion.

(Syllabus by Wilson, C.)

Error from District Court, Atoka County; R. M. Rainey, Judge.

Action by George M. Maxey and wife against Wilder S. Metcalf, and Mary H. Brinton intervenes. Judgment for plaintiffs, and intervener brings error. Affirmed.

Linebaugh Bros. & Pinson and W. B. Brownell, for plaintiff in error.

Robt. Crockett, for defendants in error.

Opinion by WILSON, C. On February 13, 1911, one Teubner was, and had been for some time prior thereto, cashier of the Tushka Bank at Tushka, Atoka county, Okla.

For some time prior to that date Wilder S. Metcalf, of Lawrence, Kan., had been making a large number of loans in Atoka county, applications for which had been sent to him by Teubner or Teubner & Lankford.

Prior to February 13, 1911, Teubner had repeatedly approached George M. Maxey, one of the defendants in error, trying to persuade him to take a loan on his farm near Tushka with Metcalf. Later Metcalf went to Tushka and was introduced to Maxey by Teubner. Metcalf and Maxey talked over together the matter of the proposed loan, and, upon being asked by Maxey what he would "figure the interest at," Metcalf replied that Teubner would figure the interest, adding: "If you take a notion to take the loan, sign up the papers and turn them over to Mr. Teubner, and the money will be ready right away." Soon after that conversation Maxey decided to borrow $1,500, and executed the necessary papers and delivered them to Teubner, who then told him that it would be a week or ten days before he would get the money. That was on February 13, 1911. It appears from the evidence of Metcalf that at the time the loan was being negotiated Teubner had $1,500 of Metcalf's money in his possession which had been sent to him to make another loan which had failed to be consummated, and that that was the money which was intended to be paid to Maxey on his loan. Later Maxey asked Teubner about the money, and was told that it was there and deposited in the bank to his credit, but upon Maxey requesting him to give him a duplicate deposit slip therefor, Teubner failed to do so, and repeatedly thereafter failed to do so, and on several occasions requested Maxey not to "check on me too hard, my boy." It further appears from the evidence that Teubner never paid the amount of the loan to Maxey or deposited it to his credit in the bank. Finally Teubner absconded, and the bank failed. Maxey and his wife, having executed notes and mortgages to secure the repayment of the loan, and not having received the money for which they were given, commenced this action in the lower court against Metcalf to procure their cancellation, and from a judgment of the trial court entered on September 6, 1912, canceling the principal note and mortgage, this appeal was taken. After the commencement of the suit against Metcalf the plaintiff in error, Mary H. Brinton, intervened by leave of court, claiming to have been the purchaser of the principal note and mortgage from Metcalf, for value, before maturity, and prayed for judgment and foreclosure because of the nonpayment of interest, and it was against her that the judgment was rendered on the principal note and

mortgage, and it is she who is maintaining this appeal.

The assignment of the note by Metcalf to Mrs. Brinton was by indorsement, "without recourse." Metcalf, who was defendant below, was not made a party to the appeal, and defendants in error urge that for that reason this court is without jurisdiction of the appeal, but that question has heretofore been passed on by the Supreme Court on a motion to dismiss the appeal, and we will not consider it again.

The only questions to be determined on the appeal are: First, was Teubner the agent of Metcalf or the Maxeys in negotiating the loan in question? and, second, was Metcalf the agent of Mrs. Brinton in making the loan, or was Mrs. Brinton the purchaser of the note and mortgage in good faith, from Metcalf, for a valuable consideration before maturity and without notice of any defect in his title?

We conclude from the evidence in the case, taking into consideration the circumstances of the transaction between Teubner and Maxey and the previous and continuous relations between Metcalf and Teubner, that Teubner acted as Metcalf's agent in negotiating the loan to Maxey, and was designated by Metcalf as his agent to pay over the proceeds of the loan to Maxey, and that the trial court's finding to that effect was reasonably well sustained by the evidence. Union Central Life Ins. Co. v. Pappan, 36 Okla. 344, 128 Pac. 716; Hibbard v. Ford, 55 Okla. 563, 155 Pac. 510. In stating this conclusion we do not feel that it is necessary to go into the details of the evidence which sustains it further than has been hereinbefore narrated.

According to the evidence in the case the $1,500 note and the mortgage securing the same, involved in this appeal, were by Metcalf assigned and transferred to Mrs. Brinton about the 25th of March, 1911. It appears from the evidence that Metcalf was a loan broker, doing business in Lawrence, Kan.; that Mrs. Brinton did not make any actual payment of money to Metcalf in consideration for said note and mortgage, but that the consideration therefor was effected by Metcalf charging Mrs. Brinton's account on his books with the amount. There was, and had been for many years prior to the times of the transactions involved in the case, a standing arrangement between Mrs. Brinton and Metcalf by which Metcalf handled funds of Mrs. Brinton, who was a resident of the state of Pennsylvania. He "kept a running account" with her, "crediting" her "with money received for investment or on account of loans collected, and charging" her "with loans sold to" her. He had "invested money for her for over 20 years and she very frequently sent" him "five hundred or a thousand dollars, or something like that," and the note involved in this action was assigned by Metcalf to Mrs. Brinton by indorsement "without recourse." Metcalf hired the attorneys in this case for Mrs. Brinton, and presumed he would pay the attorney fee and charge it to her account. Section 4109, Rev. Laws 1910, reads as follows:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

It having appeared in the case that Teubner was the agent of Metcalf for making the loan in question and to pay over the money borrowed by the Maxeys, and it conclusively appearing from the evidence that the money was not paid to Maxey or credited on his account in the bank by Teubner, and that therefore there was a failure of consideration for the note and mortgage sought to be canceled, the burden was on Mrs. Brinton to prove that she acquired title to them in due course. The case was tried to the court without the intervention of a jury, and the court found that Mrs. Brinton was not a holder in due course, and that Metcalf was her agent in the transactions whereby she became the owner of the note and mortgage. We think the evidence was amply sufficient to sustain such finding. 31 Cyc. 2019; Stockton v. Watson, 101 Fed. 490, 42 C. C. A. 211. The court furthermore found that in the transactions between Teubner and the Maxeys involved in the action, Teubner acted as the agent of Metcalf; that no consideration whatever passed to the Maxeys, or either of them, for the note and mortgage. We think these findings were also reasonably well sustained by the evidence.

The court having found from evidence reasonably well sustaining its findings that in the transactions involving the note and mortgage which are the subject-matter of this action Teubner was the agent of Metcalf; that Metcalf was the agent of Mrs. Brinton; that no consideration for the note and mortgage passed from either of said parties to the Maxeys, and that they were without consideration and void as to Metcalf, and that Mrs. Brinton was not a purchaser thereof, in due

course—the judgment canceling said note and mortgage and quieting the title to the land involved as against said mortgage was right, and should be affirmed, and we so recommend.

By the Court: It is so ordered.